# Daniel Seiders's Appeal.

*The Act of April 2d 1849, relative to preference given to labourers' wages, construed.*

1. Under the Act of April 2d 1849, all labourers employed by the persons and companies therein named, are entitled to its benefits, whether the wages agreed to be paid are measured by time, by the ton, or piece, or any other standard.

2. The labourers included in the act are those who perform with their own hands the contract they make with the employer, and where the nature of the work done requires helpers or assistants in aid of the chief workman, their wages are as much within the protection of the act as those of the principal workman.

3. Though the statute limits this protection to persons employed by the proprietors, such necessary helpers or assistants are impliedly employed by them through their agents, the chief or principal workmen; are within the protection of this statute, and are entitled to their wages not exceeding $50, where they have not been paid by their immediate employer.

ERROR to the Common Pleas of *Berks county*.

This was an appeal by Daniel Seiders and other creditors of the firm of Bertolet & Co., from the decree of the Common Pleas distributing the proceeds of the sheriff's sale of the personal property of that firm.

The case was this:—Bertolet & Co. owned and carried on a rolling-mill in the city of Reading, Berks county, at which they manufactured plate and bar-iron, and employed a large number of workmen. These workmen consisted, first, of those who worked for a certain sum per day; and secondly, those who worked, as it is termed, " by the piece," or for a fixed price per ton of iron. In this as in many, perhaps all, rolling-mills, it was considered advantageous both for the proprietors and workmen, to have certain kinds of work done, not at so much per day for the labour bestowed, but at a fixed price per ton of iron manipulated. One of the men employed was necessarily an experienced and skilful mechanic; the others were his assistants, or "helpers," as they are termed. Thus a ton of iron passed through the process of puddling, two or three men working together upon it. So in regard to heating, squeezing, and rolling iron; in each process there was engaged one principal and skilful workman, and one or more helpers. These principal workmen were paid by the proprietors of the mill a certain amount for each ton of iron manipulated, and out of the amount so received, the former paid a certain proportion, as agreed upon, to their helpers. The proprietors, as a rule, did not pay any money to the helpers, though in the case of one of them an account was kept of coal furnished for family use, the price of which was deducted, upon settlement, from the amounts paid to his principal. Until within a few months of the failure of Bertolet & Co., the workmen of all kinds were paid at the expiration of each month. The iron, fuel, machinery, motive power, and tools were all furnished by Bertolet & Co., and the work was all done in their mill.

In the month of January 1861, Bertolet & Co. were indebted largely to their workmen for wages, as well as to other persons, and on the 24th January 1861, they confessed a judgment for the sum of $2663.45, in favour of Peter Klopp, in trust for himself and the other workmen of the establishment. This sum covered all the wages due and unpaid on the 31st day of December 1860. Upon this judgment execution was issued, and the money made by a sale of the personal property of Bertolet & Co., consisting of manufactured and raw iron, coal, &c., and the

amount of the judgment properly distributed among the workmen. On the same day, but at a subsequent hour, Kauffman & Kissinger also issued an execution against Bertolet & Co., upon a judgment for $950, confessed in order to secure the amount of a store bill.

On the 29th January 1861, the appellants in this case, with other mechanics and workmen of Bertolet & Co., notified the sheriff in writing that they claimed their wages for labour performed from the 1st January 1861 to the 24th January 1861, inclusive, under the Act of Assembly in such case made and provided. The amounts claimed by each were set out in the list which accompanied the notice; the whole sum of which amounted to $753.91; and it was admitted that these amounts were correctly stated.

The money made by the sale of the personal property, which took place January 30th 1861, was $4000.64. After deducting the costs and the sum drawn from the sheriff for the execution of Peter Klopp, in trust, &c., there was left the sum of $1278.95. Out of this the workmen claimed to be paid $753.91, while Kauffman & Kissinger claimed $950 out of the same fund.

A commissioner was appointed by the Court of Common Pleas to make distribution of the fund, who filed his report on the 8th day of June 1861. On the 22d June 1861, the court recommitted the report to the commissioner for correction of errors in the statement of claims not necessary to be stated here. On the 12th August 1861, the commissioner filed a "second and corrected report." In this last report he distributed to the labourers who worked by the day, the sum of $401.12, and awarded the balance, $877.83, to Kauffman & Kissinger, on account of their execution, throwing out of the distribution and rejecting the claims of the men who worked by the ton, or "by contract," as the commissioner stated, and their assistants or helpers, amounting to $352.79. In this report there was what was called by him "a second distribution." To the first distribution of the commissioner, Daniel Seiders, and the others who worked by the ton and their helpers, excepted; but the Court of Common Pleas dismissed the exceptions, and confirmed the report of the commissioner; which was the error assigned.

*William M. Baird* and *Jacob Livingood*, for the appellants, cited the 1st and 3d sections of the Act of Assembly, approved April 2d 1849 (P. L. 337), which provides that the *wages* of mechanics and labourers employed in rolling-mills shall be preferred to an amount not exceeding $50, on giving notice, &c.; and argued that the sums due to the appellants respectively were within the meaning of the act: citing and relying on Vastine's Appeal, 2 Wright 165; Bouvier's Law Dict. 639; Penna. Coal Co. *v.* Costello, 9 Casey 241, and 8 East's Rep. 113.

[Daniel Seiders's Appeal.]

*J. Hagenman,* for appellees.—Unless the rights of the appellants are clearly within the act, they cannot prevail. 1. The evidence shows that there were a number of persons employed by Bertolet & Co. who did their work by contract; that is to say, the heaters and puddlers did their work by the ton, and employed others to help them. The persons so employed to help, Bertolet & Co. were in no way liable to pay. The helpers' names never appeared on the books of the firm, and were never in any case paid by them. They were not mechanics and labourers employed by them, and are therefore not entitled to be paid out of the proceeds of the sale of their property. The names of these helpers are not found in the judgment given to secure the workmen, and it was upon this judgment that the property was sold. Bertolet & Co. did not recognise them as their employees. They could never have brought suit against the firm for their claim: by what right, then, can they come on the proceeds of sale for payment?

2. Can contractors come in on the proceeds of sale as against Kauffman & Kissinger, execution-creditors? The evidence of Leaf shows that one of the rollers employed some six men and boys, and that another employed as many as eight and ten hands. The law was never intended to protect such labour; for, if so, the limitation of $50 would not be sufficient. Take the case of the one who employed some ten hands to perform his contract. If he could get $50, that would make a division of $50 between the ten hands and himself, or less than $5 for each. The 1st section of the act says, "mechanics and labourers employed by such person or persons." The 3d section says, "such officers shall pay to such miners, mechanics, or labourers, out of the proceeds of sale, the amount each is just and legally entitled to receive." The act is intended only to protect and secure the labourer who earns the money with his hands. It was not designed to protect the contractors, who, by their contracts, speculated upon or made profit out of the labour of others. These contractors have attempted to get around the act limiting the amount to $50, for when their claim is more than that sum, they then put in the names of their employees. In the case of The Pennsylvania Coal Co. *v.* Costello, 9 Casey 241, the claimant did the work himself, and his assistant only removed the dirt and rubbish.

3. The claim of Henry Richards, one of the appellants, is even more objectionable. His claim on the proceeds of sale was not for his own labour, but for horses, carts, and drivers.

The opinion of the court was delivered by
WOODWARD, J.—We decide
1st. That under the Act of Assembly of 2d April 1849,

[Daniel Seiders's Appeal.]

Purd. 835, all laborers employed by the persons or companies referred to in the act are entitled to its benefits, whether the wages agreed to be paid them are measured by time, or by the ton, or by the piece, or any other standard.

2d. By laborers we mean those who perform with their own hands the contract they make with the employer; and where the nature of the work contracted for is of a nature to require helpers of the chief workman, and he employs his helpers, he is to be considered as authorized to do so by the proprietor, and the wages earned by such helpers are as much within the protection of the statute as the wages of the chief workman himself. The statute does indeed limit itself to persons employed by the proprietor, but proprietors may employ hands through an agent, and when the owner of a rolling-mill lets a job to a roller, puddler, heater, or other master workman at so much the ton, he impliedly authorizes him to employ all necessary helpers. Permitting such subordinates to labour in his rolling-mill for his benefit is a strong implication of his assent to their employment. We do not mean that the presumption would be such as would support an action at law against the proprietor, but only such as admits the helpers to the benefit of the special statute.

3d. If the master workman has paid his helpers their wages, they are extinguished, of course, and his own are to be settled according to his contract; but if he has not paid his helpers, they may come in and claim under the statute not exceeding $50 respectively. For whatever he has earned under his contract over and above the amount paid to his helpers he may claim also, if the amount exceed not $50.

According to our understanding of the record these views result in affirming the commissioner's second scheme of distribution instead of the first.

The decree of the court below is accordingly reversed, and it is here decreed that distribution of the fund in court be made according to what the commissioner calls his second distribution, and that the costs of this appeal be paid out of the fund before distribution be made.