PEOPLE *ex rel.* VAN VALKENBURG *v.* MYERS.

*(Supreme Court, Special Term, New York County. October, 1890.)*

MUNICIPAL CORPORATIONS—WAGES OF EMPLOYES—WEEKLY PAYMENT.

A person holding the position of property clerk and assistant paymaster of the department of parks of the city of New York, and receiving an annual salary, even if an "employe" of the city is not an employe earning "wages," within Laws N. Y. 1890, c. 388, ("The Weekly Payment Law,") providing that every municipal corporation in the state shall pay weekly each and every employe the wages earned by such employe to within six days of the date of such payment.

Application for writ of *mandamus* on the relation of William Van Valkenburg against Theodore Myers, as comptroller.

*John H. Strahan,* for relator. *William H. Clark, Charles Blandy,* and *E. J. Friedman,* for respondent.

ANDREWS, J. The relator is property clerk and assistant paymaster of the department of parks of the city of New York. He claims to be an employe of the city, earning wages, and therefore entitled to the benefits of the act, (chapter 388, Laws 1890,) known as "The Weekly Payment Law," and applies for a *mandamus* requiring the respondent, who is the comptroller of the city, to pay his salary weekly. The statute in question provides, among other things, that every municipal corporation in this state shall pay weekly each and every employe the wages earned by such employe to within six days of the date of such payment. There are no disputed questions of fact involved in this matter, and the sole question of law to be determined is whether the relator is an "employe" of the city, "earning wages" within the meaning of the statute. After a careful consideration of the matter, I have reached the conclusion that the statute does not apply to the relator, and that the application should therefore be denied. If the relator is a public officer he certainly cannot be considered an "employe" of the city, and there is some ground for holding that he is such an officer. In *Costello* v. *Mayor,* 63 N. Y. 48, the plaintiff had been appointed an additional clerk to the board of aldermen, to be known as the "general clerk," and whose duties were to index the proceedings of the board. The court of appeals held that he was a public officer. In *People* v. *Board,* 75

N. Y. 38, it was held that a public surgeon was a public officer. In *Rowland* v. *Mayor*, 44 N. Y. Super. Ct. 559, 83 N. Y. 372, it was held that the plaintiff, who had been appointed by the board of supervisors an attendant upon the supreme court, was a public officer. In *Collins* v. *Mayor*, 3 Hun, 680, it was held that the plaintiff, who was eighth assistant clerk to the board of aldermen, was also a public officer. In *Rowland* v. *Mayor, supra*, the court said: "Whether we look into the dictionary of our language, the terms of politics, or the diction of common life, we find that whoever has a public charge or employment, or even a particular employment affecting the public, is said to hold, or to be in, office." The relator has a public charge or employment affecting the public, and he performs independent duties imposed by law upon the park department. Under the above decisions, and others which might be referred to, it would seem that he is to be considered a public officer. Assuming, however, that the relator is not such an officer, it does not necessarily follow that he is an "employe" within the meaning of the statute. In *People* v. *Board, supra*, the court said: "Employes are usually considered as embracing laborers and servants and those occupying inferior positions." The relator holds the responsible position of property clerk and assistant paymaster. He has charge of valuable property belonging to the city, and disburses moneys, and receives an annual salary of $3,000. He is not a laborer or servant, and the term "employe," as ordinarily used, would not include a person holding such a position as he does. But, even assuming that the relator is not a public officer, and is an "employe" within the meaning of the statute, he is not an "employe" earning "wages," because his compensation is not fixed by the day, week, or month, but by the year. He does not receive "wages," but is paid a large annual salary. It is true that, in a certain sense, it may be said that the word "wages" includes the salaries of public officers and clerks, and the fees of lawyers, physicians, and other professional men; but that is not the ordinary meaning of the word, and it is an elementary rule that "the words of a statute are to be taken in their ordinary and familiar signification and import, and regard is to be had to their general and proper use." Dwar. St. 193. The distinction between "salary" and "wages" is recognized by all lexicographers, by the courts in many adjudicated cases, and by the legislatures of this and other states, and by congress, in innumerable statutes. Webster defines "salary" as follows: "The recompense or consideration stipulated to be paid to a person for services, usually a fixed sum to be paid by the year, as to governors, magistrates, settled clergymen, instructors of seminaries, or other officers, civil or ecclesiastical. When wages are stated or stipulated by the month, week, or day, we do not call the compensation 'salary,' but 'pay' or 'wages,' as in the case of military men and laborers." He defines "wages" as follows: "Hire; reward; that which is paid or stipulated for services, but chiefly for services for manual labor, or for military or naval services. We speak of 'servants' wages,' 'laborers' wages,' or 'soldiers' wages,' but we never apply the word to the rewards given to men in office, which are called 'fees' or 'salary.'" Abbott's Law Dictionary defines "wages" as follows: "The agreed compensation for services rendered in a menial or subordinate capacity." The same work defines "salary" as "a reward or compensation for services performed. It is usually applied to the reward paid to a public officer for the performance of his official duties." Burrill's Law Dictionary defines "salary" as "an annual compensation for services rendered; a fixed sum to be paid by the year for services." Worcester, referring to "wages," says: "In ordinary language the term 'wages' is usually employed to distinguish the sums paid to persons hired to perform menial labor." Winfield defines "salary" as "the per annum compensation to men in official and some other situations." The same authority defines "wages" as follows: "The word 'wages' means the compensation paid to a hired person for his services. This compensation to the laborer may be a specific sum for a given time of

service, or a fixed sum for a specified work; that is, payment may be made by the job." The same distinction between "salary" and "wages" is to be found in many cases, in which the courts have been called upon to construe the statutes containing those words. In *McLellan* v. *Young*, 54 Ga. 399, McCay, J., in passing upon the question as to the liability of a municipal corporation to be garnished for the "salaries" of its officers, said: "The act evidently contemplates persons who have wages due them, and whose ' wages ' were exempted from garnishment under previous acts. The ' salary ' of a public officer is in no fair sense of the word ' wages.' Such salaries were not exempt under acts exempting wages." It was held in *Railroad Co.* v. *Falkner*, 49 Ala. 115, that the salary of a president of a railway company was not exempt from garnishment. The court said: "The president of a railroad company cannot be said to be a laborer or employe within the meaning of this law. The term ' wages ' indicates inconsiderable pay, without including salary, which is suggestive of larger compensation for personal services. But its application to laborers and employes certainly conveys the idea of a subordinate occupation, which is not very remunerative; one of not much independent responsibility, but rather subject to immediate supervision." In *Cowdin* v. *Huff*, 10 Ind. 83, the distinction between "salary" and "wages" was recognized, and the definitions of those words, above quoted from Winfield were given by the court; and in many other cases decided by the American courts, similar definitions are to be found. The English courts have also recognized the same distinction. In *Gordon* v. *Jennings*, 9 Q. B. Div. 45, the court said: "The term ' wages ' is not applied to the remuneration of a high or important officer of the state, or of a country, for instance, but to that of domestic servants, laborers, and persons of a similar description." T have not been referred to any case, and I believe none can be found, in which the word "wages" has been held to include "salary;" in fact all the cases hold directly the contrary. The same distinction between the "salaries" of officers and clerks, and the "wages" of laborers and others holding subordinate positions, is to be found in many sections of the law known as the "Consolidation Act," (chapter 410, Laws 1882,) and in numerous other statutes of this and other states, and in acts of congress. Whenever a legislative body is dealing with the compensation to be made to officers and clerks, as well as laborers, it invariably uses the word "salary" as well as the word "wages;" and, while the words "allowance" and "compensation" are sometimes used instead of "salary" in reference to officers and clerks, no instance can be found in which the compensation of officers or clerks is called "wages." It must be presumed that the legislature of 1890 was aware of the distinction which had been made between the words "salaries" and "wages," by lexicographers, courts, and other legislative bodies, and that if it had been intended that persons receiving annual "salaries" should be covered by the statute, the word "salary" as well as "wages" would have been used. There are several other provisions of the statute which show conclusively that the legislature did not intend to provide for the weekly payment of persons receiving salaries. If the relator is a public officer, and the act applies to him, then it applies to the heads of all departments of the city government, and their deputies. If the relator is not a public officer, but is to be regarded as an employe, and the act applies to him, it must also apply to many other persons in the various departments of the city government; and the statute contains a number of provisions and expressions which are wholly inapplicable to public officers or clerks. Among such provisions and expressions are those which refer to the "regular place of labor of the employe," and "the wages earned by him;" the provision forbidding the assignment of the future wages of an "employe" to the corporation from whom such wages are to become due; also the provision authorizing the factory inspectors of the state to maintain actions to recover the penalties imposed by the act for a non-compliance with its provisions. The officers and

clerks of the municipality cannot in any proper sense be said to have "a regular place of labor;" they perform their respective duties in offices contained in various public buildings.

Again. "Wages earned" is an apt expression in regard to laborers who are only entitled to pay for services actually rendered, but is entirely inappropriate when used concerning public officers or clerks who receive annual salaries, which are not due until the expiration of the year, and are entitled to be paid so long as they hold their offices, or places, without regard to the services rendered. Moreover, an "employe," has a legal right to assign his future wages; but a public officer cannot lawfully assign his future "salary." *Bliss v. Lawrence*, 58 N. Y. 442. Section 2 of the statute assumes that "wages" of "employes" are legally assignable, but makes the assignment invalid if made to the corporation, or any one acting in its behalf. The legislature must be presumed to have known that the court of last resort in this state had decided that a public officer could not assign his future "salary," and certainly would not have inserted such a provision if it had been intended that the word "employe" should include public officers. The provision that the penalties imposed by the act shall be sued for by the factory inspectors is strong evidence that neither officers nor clerks are within the purview of the statute. It is the duty of the factory inspectors to look after the interests of operatives in factories. It is not to be supposed that the legislature would have devolved upon these officers the duty of protecting the interests of the officers and clerks of all the cities in this state.

Again. In the act, chapter 410, Laws 1882, which was a consolidation of the statutes relating to the city of New York, the same distinction between "salaries" and "wages" is frequently made; and it is provided that some salaries shall be paid monthly, some quarterly, and that in all other cases the comptroller of the city shall prescribe the manner in which salaries shall be drawn. These provisions of law have not been expressly repealed by the legislature, and local and special laws are not repealed by a general law, unless the intent to repeal is entirely clear. *In re Evergreen*, 47 N. Y. 216; *In re Central Park*, 50 N. Y. 493; *People v. Quigg*, 59 N. Y. 83; *People v. Supervisors*, 73 N. Y. 176; *McKenna v. Edmundstone*, 91 N. Y. 231; *Mangam v. Brooklyn*, 98 N. Y. 585; *Weiler v. Nembach*, 114 N. Y. 39, 20 N. E. Rep. 623. If the legislature in passing the weekly payment law had intended to repeal all such provisions of the consolidation act, and to provide that the salaries of the officers and clerks of this city should be paid weekly, it would not have merely spoken of the "wages" of "employes," but it would, at least, have done as all previous legislatures have done, when enacting laws relating to the compensation of officers and clerks, and have used the word "salary" as well as "wages," and the words "officers" and "clerks" as well as "employes."

Lastly, without attempting to express any opinion as to whether the legislature ought to pass a law providing for the weekly payment of such salaries, it is very obvious that there are many reasons why laborers, and others, receiving wages, as that term is ordinarily understood, from private and municipal corporations ought to be paid weekly, which do not apply to the officers and clerks of such corporations, who receive annual salaries. The application for a *mandamus* will be denied, but without costs.