## Granville Hartman, Appellant, *v.* P. M. Mitzel, defendant, and E. W. Spangler, Garnishee.

*Attachment execution—Wages—Compensation for services in getting testimony nonattachable.*

Compensation due for services rendered " to hunt up witnesses and testimony to defeat a recovery on a forged note " involving, as such service did, both mental and physical effort, or the wages or salary due as such compensation is nonattachable, being exempted under the 5th section of the Act of April 15, 1845, P. L. 459.

Submitted March 9, 1898. Appeal, No. 55, March T., 1898, by plaintiff, from judgment of C. P. York Co., Oct. T., 1897, No. 8, in favor of the garnishee on his answer. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Attachment execution. Before STEWART, J.

The following facts appear from the record : The plaintiff attached in the hands of Edw. W. Spangler, Esq., counsel for William F. Sechrist, administrator of the estate of Francis Sechrist, the sum of $100 awarded by the auditor, distributing the balance on the account of said administrator to P. M. Mitzel.

The answer avers that Mitzel " was employed to hunt up witnesses and gather up testimony to defeat a recovery on said note ; that he was directed from time to time to look up witnesses and testimony and subpœna witnesses in that behalf, all of which he did ; that for the services so rendered he presented a bill to the auditor of over $200 ; that the same being deemed excessive, a compromise was finally made on the basis of $100 for the services so rendered, and which sum was allowed and awarded to him by the auditor."

The court below entered judgment in favor of the garnishee on his answer.

*Error assigned* was overruling plaintiff's demurrer to answer of garnishee, and in entering judgment for the garnishee on his answer.

*Henry C. Niles* and *George E. Neff*, for appellant.—There is

but one question raised by this appeal : Is a debt due for services performed in gathering testimony concerning litigation, such wages of labor or salary of a public or private employment as is exempt from liability to attachment?

Where a broker or factor sells one or more articles for another but is not the regular salesman peculiarly for one employer, his compensation may be attached : Hamberger v. Marcus, 157 Pa. 139.

Can it be that the act should be construed so that the compensation due an artist for a picture or statue, the fees earned by a lawyer or the charges of a blacksmith for shoeing a customer's horse, are alike exempt from attachment?

The case here on appeal is stronger than any of these.

It was not even the regular occupation of the defendant, to look up testimony and subpœna witnesses.

A true parallel would be : If an artist should in a particular case have money awarded to him for legal advice ; or an advocate, in an emergency, for services at the forge ; or a smith, for extraordinary assistance in a painter's studio.

*E. W. Spangler* for appellees, relied on Hamberger v. Marcus, 157 Pa. 139. See also Heebner v. Chave, 5 Pa. 115 ; Coal Co. v. Costello, 33 Pa. 241.

The wages or salary of an assistant clerk in a drug store were not attachable : Thompson v. Wingert, 4 W. N. C. 483 ; nor in case of a bookkeeper : Parker v. Edwards, 5 Kulp, 419 ; Askam v. Wright, 1 W. N. C. 156 ; McCuttle v. Fitzgerald, 2 W. N. C. 396 ; nor of the wages of a chief workman, having paid the wages of his helpers : O'Brien v. Hamilton, 35 Leg. Int. 68, nor of a canvasser for advertisements and subscriptions, and an occasional reporter : Central Newspaper Union v. Gracie, 7 P. C. C. R. 188.

In view of all these authorities how can be attached the wages of the defendant who was hired by the administrator to " hunt up testimony and subpœna witnesses " throughout the county to thwart a nefarious and very costly attempt to deprive the children of Francis Sechrist of their entire inheritance? If he is not comprehended within the provisions of the act of assembly, who is?

OPINION BY SMITH, J., July 29, 1898:

In answer to interrogatories filed in this case, the garnishee admitted that he owed the defendant in the judgment the sum of one hundred dollars, which was earned while employed in assisting the garnishee "to hunt up witnesses and testimony to defeat a recovery" on a forged note, in a proceeding then pending. The answer further set up, on behalf of the defendant, that the money so earned was exempt from attachment by the following proviso to the fifth section of the act of April 15, 1845: "Provided, however, that the wages of any laborers or the salary of any person, in public or private employment, shall not be liable to attachment in the hands of the employer." The appellant contends that this indebtedness is not "wages" or "salary" within the meaning of the statute. "Wages" is defined to be "A compensation given to the hired person for his or her services," Bouvier's Law Dictionary; "Compensation for services by the day, week or month; compensation to a hired person for services," Kenny's Law Dictionary; "The compensation agreed upon by the master to be paid to a servant, or to any other person hired to do business for him," Wharton. "Salary" is said to be "A reward or recompense for services performed," Bouvier's Law Dictionary; "A recompense or consideration made to a person for his pains and industry in another person's business," Cowel, Wharton.

It will thus be seen that, according to these definitions, there is substantially no difference in the meaning of the words. The essential of both is compensation for services rendered. In the common use of those terms the word "salary" is employed in referring to a stated allowance for services of a superior grade, or for longer than a daily period; while the word "wages" seems to be applied generally to compensation for short periods or for smaller sums. Taken together, they are broad enough to cover all compensation for services rendered in whatever occupation or capacity, no matter how extended or short the period of employment, or how large or small the amount. Whatever may be said as to the extension of the application of either, when considered separately, there can be no doubt that within their united scope is included all remuneration for services performed by one person for another.

It seems that in some states a distinction is made as to their

legal import, but they are practically regarded as synonymous by the courts of Pennsylvania. Thus, in Commonwealth v. Butler, 99 Pa. 535, Chief Justice SHARSWOOD, speaking for the Supreme Court, said: "According to the most approved lexicographers, the words 'wages' and 'salary' are synonymous. They both mean one and the same thing: 'a sum of money periodically paid for services rendered.' . . . The truth is, and this the lexicographers seem to hold, that if there is any difference in the popular sense between 'salary' and 'wages,' it is only in the application of them to more or less honorable services. A farmer pays his farm hands in common speech wages— whether by the day, the week, the harvest, or the year. If for any reason he has occasion to employ an overseer, his compensation, no matter how measured, is called a salary. An ironmaster pays his workmen wages, his manager receives a salary. A merchant pays wages to his servant who sweeps the floor, makes the fire and runs his errands, but he compensates his salesman or clerk by a salary. How can it make any difference in what way the compensation is ascertained?"

The proviso of the act under consideration sets no limit to the amount of wages or salary exempt or to the period covered by the contract of employment; its language is: "The wages of any laborers, or the salary of any person . . . . shall not be liable to attachment." This exemption remains unaffected by subsequent legislation, except that, under the act of May 8, 1876, P. L. 139, wages may be attached on a judgment obtained for board, and in such case the defendant may, under the act of April 9, 1849, P. L. 533, claim the exemption of $300 from attachment: Smith v. McGinty, 101 Pa. 402. The Supreme Court, however, has put a somewhat restricted construction on the statute, in order to more accurately express the legislative purpose. In Heebner v. Chave, 5 Pa. 115, this act was before the Supreme Court for the first time, and in construing the proviso, COULTER, J., said: "The term labour is, to be sure, of very extensive signification. The merchant labours; for there is mental as well as manual or corporeal labour; the farmer labours, the professional man labours; and judges labour, as every member of this court can testify. But it is this very capability of enlarged extension which produces the necessity to circumscribe and limit the word as used in the stat-

ute, in order to accomplish what we believe must have been the intent of the legislature. That is, to secure to the manual labourer by profession and occupation, the fruits of his own work for the subsistence of himself and family. If it is extended to the contractor who employs others, we would, by that construction, prevent the actual labourer who earned the money, from attaching it to secure the wages of his labour and his reward, and save it for the contractor, who perhaps never rolled a stone from its bed, whose sweat never fell on the work, and whose spade never entered the ground. We believe, that by confining the exemption from attachment to the actual reward or wages earned by the hands and labor of the individual himself and his family under his direction, we best accomplish the benificent design of the legislature."

While the decision of this case was criticised in Coal Company v. Costello, 33 Pa. 241, it was because, possibly, full effect was not given to the purpose of the act, as above quoted, in applying it to the facts of the case. The aim and scope of the statute, as above stated, were not qualified; and they were further defined in Smith v. Brooke, 49 Pa. 147, where it is stated that: "The statute secures to the laborer and his family the earnings of his own hands; but this is its full intent and scope. If it were carried further by judicial decision, it would be hard to assign a limit to its operation." It was not meant, however, to confine the operation of the act to manual labor; it applies to the wages or salary of personal labor of the hand, voice or brain, whether skilled and artistic, or unskilled and uneducated. Thus the salary of a chorister is within the proviso: Catlin v. Ensign, 29 Pa. 264, as well as the earnings of a workman in the coal mine: Coal Company v. Costello, supra.

The earlier adjudications were aimed principally at the exclusion of contractors and others who performed none of the labor themselves, but claimed the benefit of the statute to cover profits on the labor of those who actually performed the work; while the later cases extend the purpose of the act as given in Heebner v. Chave to more important employments, requiring superior skill, training, and mental equipment. But the decisions are consistent and uniform as to the subject-matter of the exemption, namely, "What the employer owes to his employee for personal services rendered in that relation:" Corr's Appeal, 157 Pa. 133.

It is admitted by the demurrer, that the defendant in the judgment was employed by the garnishee to perform services of a certain character involving both mental and physical effort, and that the money attached was due as compensation for the performances of these services. The service was similar in nature to that of a traveling agent who sells goods on commission; and it has been held that commissions thus earned are non-attachable : Corr's Appeal, supra.

It follows, therefore, from what has been.said, that the moneys levied upon, in the present case, are exempt from attachment.

Judgment affirmed.