### FIRST NAT. BANK OF WILKES-BARRE v. BARNUM.

(District Court, M. D. Pennsylvania. March 9, 1908.)

No. 1.022, in Bankruptcy.

**1. WORDS AND PHRASES—"WAGES"—"EARNINGS."**

The term "wages," as distinguished from salary, is commonly understood to apply to compensation for manual labor, skilled or unskilled, paid at stated times, and measured by the day, week, month, season, or piece, but not by the job. The term does not include profits on the services of others, and it is not so broad as "earnings," which comprehends returns from skill and labor in whatever way acquired.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 8, pp 7369–7373, 7646, 7831; vol. 3, pp. 2302–2304.]

**2. SAME—"SALARY."**

"Salary" refers to a superior grade of services and implies a position or office, and suggests something higher, larger, and more permanent than "wages."

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6287–6291; vol. 8, pp. 7792, 7793.]

3. SAME—"HIRE."

The word "hire" is associated with the act of employment rather than reward for services, and in the latter connection is more on the plane of wages than of salary, though in a sense it comprehends both, and is also applied to engaging the use of property. One "hires" a coachman, a gardener, or a cook, or a carriage, and may be said to hire a superintendent, a bookkeeper, or a clerk, though it seems better in such instances to say engage or employ. The term is improperly applied to the securing of professional services—e. g., a lawyer's or a doctor's.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, pp. 3309–3311; vol. 8, p. 7679.]

4. BANKRUPTCY—EXEMPTION FROM INVOLUNTARY PROCEEDINGS—WAGE-EARNER —MUSIC TEACHER NOT.

A music teacher giving lessons at so much an hour is not comprehended by the bankruptcy act provision that wage-earners whose compensation does not exceed $1,500 a year shall not be subject to involuntary bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 8, p. 7365.

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

5. BILLS AND NOTES—ALTERATION OF NOTE—RELEASE OF ACCOMMODATION IN-DORSER.

Under Act Pa. May 16, 1901, § 124 (P. L. 211), providing that where a negotiable instrument is materially altered without the assent of all parties liable thereon it is avoided, etc., and section 125 (P. L. 211), making any alteration which changes the place of payment a material alteration, where bankrupt, for the accommodation of his brother, indorsed blank notes which specified a certain bank as the place of payment, he could not thereafter object, as to a holder in due course, to the blanks having been filled out in whatever way his brother chose, and he must be held to have given his unqualified consent to the supplying of the essential terms. But he was released by his brother's unauthorized act in striking out the name of the bank where the notes were payable and inserting another, although the alteration was made in the brother's handwriting, the same as the rest of the written parts. The provision of section 124 that when a materially altered instrument is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor does not save the bankrupt's liability, because, under the express terms of section 52 (P. L. 202), having notice of the infirmity in the notes, the discounting banks cannot claim to be holders in due course.

In Bankruptcy. On certificate of referee.

W. S. McLean and Lawrence B. Jones, for petitioning creditors. George H. Troutman, for alleged bankrupt.

ARCHBALD, District Judge. These are involuntary proceedings, and are resisted by the respondent on the grounds: (1) That he is a wage-earner; and (2) that the petitioners are not creditors. It appears, as to the first, that the respondent is a music teacher, giving lessons on the piano, organ, violin, and mandolin, at 50 cents an hour, earning from $35 to $40 a month, or a little less than $500 a year, some pupils coming to his house for instruction, and others being taught at their own homes. This constitutes his livelihood, in addition to which, however, he has a summer cottage at Harvey's Lake, which he rents for $175 a season, and another property from

which he gets $150, besides which he has divided up certain land that he owns, and is selling it off in lots. The question is whether under these circumstances he is a wage-earner within the meaning of the law, so as not to be subject to involuntary bankruptcy.

A wage-earner is defined by the bankruptcy act as one "who works for wages, salary, or hire, at a rate of compensation not exceeding one thousand five hundred dollars per year." By this it is evidently intended to relieve from adverse proceedings those who, not being engaged in business or trade, depend for a living upon the result of individual labor or effort, without the aid of property or capital. But not all of this class are exempt, as is shown by the limit of $1,500. And the work done must be such as is compensated by wages, salary, or hire, other earnings not being put in the same category. These terms mean much the same thing, and are no doubt collectively used in order to cover the different possible kinds of employment comprehended within the general idea. Wages, as distinguished from salary, are commonly understood to apply to the compensation for manual labor, skilled or unskilled, paid at stated times, and measured by the day, week, month, or season. Commonwealth v. Butler, 99 Pa. 535; Lang v. Simmons, 64 Wis. 525, 25 N. W. 650; Campfield v. Lang (C. C.) 25 Fed. 128; Henry v. Fisher, 2 Pa. Dist. R. 7; Louisville, etc., R. R. v. Barnes, 16 Ind. App. 312, 44 N. E. 1113; Fidelity Ins. Co. v. Shenandoah Valley R. R., 86 Va. 1, 9 S. E. 759, 19 Am. St. Rep. 858; State v. Haun, 7 Kan. App. 509, 54 Pac. 130. And also by the piece. Pennsylvania Coal Co. v. Costello, 33 Pa. 241; Swift Mfg. Co. v. Henderson, 99 Ga. 136, 25 S. E. 27; Ford v. St. Louis R. R., 54 Iowa, 728, 7 N. W. 126; Seider's Appeal, 46 Pa. 57; Adcock v. Smith, 97 Tenn. 373, 37 S. W. 91, 56 Am. St. Rep. 810. But not by the job. Heebner v. Chave, 5 Pa. 115; Berkson v. Cox, 73 Miss. 339, 18 South. 934, 55 Am. St. Rep. 539; Morse v. Robertson, 9 Hawaii, 195; Henry v. Fisher, 2 Pa. Dist. R. 7. Nor including profits on the services of others. Smith v. Brooke, 49 Pa. 147; Sleeman v. Barrett, 2 H. & C. 934; Riley v. Warden, 2 Exch. 59. Neither is it so broad a term as "earnings," which comprehend the returns from skill and labor in whatever way acquired. People v. Remington, 45 Hun (N. Y.) 338; Matter of Stryker, 73 Hun, 327, 26 N. Y. Supp. 209; Id., 158 N. Y. 526, 53 N. E. 525, 70 Am. St. Rep. 489; Jenks v. Dyer, 102 Mass. 236; Nuding v. Urich, 169 Pa. 289, 32 Atl. 409; Goodhart v. Pennsylvania R. R., 177 Pa. 1, 35 Atl. 191, 55 Am. St. Rep. 705; Hoyt v. White, 46 N. H. 45. Indeed the act itself in exempting wage-earners recognizes that there are other kinds. Salary, on the other hand, has reference to a superior grade of services. Hartman v. Nitzel, 8 Pa. Super. Ct. 22. And implies a position or office. Bell v. Indian Live Stock Co. (Tex.) 11 S. W. 346. By contrast, therefore, "wages" indicate inconsiderable pay for a lower and less responsible character of employment. South Alabama R. R. v. Falkner; 49 Ala. 115; Gordon v. Jennings, 9 Q. B. Div. 45. Where salary is suggestive of something higher, larger, and more permanent. Meyers v. N. Y., 69 Hun, 29, 23 N. Y. Supp. 484; White v. Koehler, 70 N. J. Law, 526, 57 Atl. 124; State v. Duncan, 1 Tenn. Ch. App.

334; Palmer v. Marquette Rolling Mill, 32 Mich. 274. The word "hire" is rather associated with the act of employment than the reward for services done; and in the latter connection is more on the plane of wages than of salary, although in a sense it comprehends both; and is also applied to engaging the use of property. We hire a coachman, a gardener, or a cook; or a carriage to take a ride. And may also be said to hire a superintendent, a bookkeeper, or a clerk, although it would seem more correct, in the latter instances, to say engage or employ. In some communities, a farm hand is called a hireling, without intending any reflection, although in general speech the term is one of reproach. As further defining its use, a laborer, according to Sacred Writ, is said to be worthy of his hire. And coming up from the people, as the word thus does, it is sometimes applied, out of place, to the securing of professional services, as where one is said to hire a lawyer, a doctor, or a person of that class.

The cases directly decided under the bankruptcy act confirm these views. Thus, it is held that a person doing hauling with his team by the day—which affords a good example of what may in strictness be termed a hiring—is a wage-earner. In re Yoder (D. C.) 11 Am. Bankr. Rep. 445, 127 Fed. 894. Although it is said that, in allowing the priority given to wages by the act, the amount due for the use of the team must be distinguished from that for the services of the person himself. In re Winton Lumber Co., 17 Am. Bankr. Rep. 117. So money due for piece work, paid weekly, is held to be wages. In re Gurewitz, 10 Am. Bankr. Rep. 350, 121 Fed. 982, 58 C. C. A. 320. And a bookkeeper, in the employ of others, receiving a salary of $65 or $70 a month, is a wage-earner within the meaning of the law. In re Pilger (D. C.) 9 Am. Bankr. Rep. 244, 118 Fed. 206. And so, as we may assume—applying the same principle—would be the chorister of a church, paid a specified yearly sum for his services. Catlin v. Ensign, 29 Pa. 264. Or a traveling salesman receiving a percentage commission on the amount of his sales. Hamberger v. Marcus, 157 Pa. 133, 27 Atl. 681, 37 Am. St. Rep. 719. But not a factor or broker, engaged in the business of selling goods on commission. Id. Nor a millowner, who saws lumber for others at so much a thousand. Campfield v. Lang (C. C.) 25 Fed. 128. Nor one who builds a house or other structure, by contract, even though he does a part of the work himself. Berkson v. Cox, 73 Miss. 339, 18 South. 934, 55 Am. St. Rep. 539; Henry v. Fisher, 2 Pa. Dist. R. 7; Morse v. Robertson, 9 Hawaii, 195. Nor one who tows a canal boat. Ryan v. Hook, 34 Hun, 191. Or threshes out grain by the job. Johnston v. Barrills, 27 Or. 251, 41 Pac. 656, 50 Am. St. Rep. 717. Nor are the fees of lawyers, physicians, and the like to be classed as wages. Vane v. Newcombe, 132 U. S. 220, 10 Sup. Ct. 60, 33 L. Ed. 310; People v. Myers (Sup.) 11 N. Y. Supp. 217. Nor the debts due to a blacksmith from his customers for his services. Tatum v. Zachry, 86 Ga. 573, 12 S. E. 940. Nor is a school teacher a laborer or servant; however, we may speak of one, at times, as being hired. School District v. Gautier, 13 Okl. 194, 73 Pac. 954.

From these considerations, as it seems to me, but one conclusion can be drawn. A person, like the respondent, giving music lessons at so

much an hour, is not a wage-earner within the meaning of the act. Teaching is a profession, denoting a nicer relation and involving a finer character of work, and entitled, like that of the lawyer, doctor, the engineer, the architect, or the minister, to be regarded as upon a higher plane. His work is mental, not physical. He labors with his head, not his hands. And while that may not be distinctly conclusive, it has its weight. He is the tutor, or instructor, of his pupil, not his servant; his, of the two, being the master mind. This is not to say that one who works for a salary, like the teachers in our public schools, may not be wage-earners, within the meaning of the bankruptcy law. The fact of being under a salary makes a difference, and brings the case squarely within the act, although it may be noticed in passing that, in the school laws of the state, teachers are said to be appointed, not employed or hired. But the compensation received by the respondent, in the present instance, is certainly not a salary. Neither is it wages. And notwithstanding the misuse of the term, alluded to above, neither can he be said to work for hire. He is simply paid a stipulated sum or stipend in return for the instruction which he gives, which he holds himself out as competent to impart, being engaged so to do by his pupils or their parents, but not hired, any more than the lawyer, doctor, or others in professional life. The returns from his teachings may be earnings, which as we have seen is a comprehensive term, but not wage-earnings, and so not effective to exempt him from liability here.

The case turns, therefore, on whether the petitioners are creditors, as to which it appears that their claims are based on certain promissory notes, indorsed by the respondent, J. B. Barnum, for the accommodation of his brother, B. F. Barnum, the maker, for whom they were discounted by the petitioners; who are Wilkes-Barre banks. The genuineness of the respondent's indorsement is not contested, but he claims to be released, because, after it was affixed, the notes were materially altered without his authority, by changing the name of the bank where they were originally made payable. These notes were the last of a series of discounts at each of the banks involved, the course pursued by the respondent and his brother with regard to them being that every so often, as those which he had previously indorsed were supposed to be coming due, but without any real regard to that, he would indorse a number of others in blank which his brother would subsequently fill out and execute as he happened to need them. In each instance printed or engraved forms of notes were used, in terms made payable at the Second National Bank of Wilkes-Barre, as follows:

$———     Wilkes-Barre, Pa., ——— 190
——————————————————— after date ——— promise to pay
to the order of ———————————————————
———————————————————————————— /100 Dollars
at the Second National Bank of Wilkes-Barre, Pa.
Value received without defalcation.
No. ———     Due ———

Taking the notes in that shape, his brother, as he had occasion to raise money upon them, would insert in each the date and amount, and the time within which it was to become payable; and, when it was to be discounted elsewhere than at the Second National Bank of Wilkes-

Barre, **he would** erase the name of that bank, and interline that of the one which was to do the discounting. This change having been made without the knowledge or consent of the respondent, he claims to be discharged thereby.

There is no question that a change in the place where a note is made payable is a material alteration which releases an indorser, unless it is done with his assent. Act Pa. May 16, 1901, §§ 124, 125 (P. L. 211). But it is sought to distinguish the present case, for the reason that, at the time the notes were indorsed by the respondent, they had not been executed by his brother, and, except in the merest outline, had been given no definite character or form. And that, having been indorsed and intrusted by the respondent to his brother in that shape, he committed himself to whatever was subsequently done with them, including such a change in the place of payment as appears. It is no doubt true that, to the extent that blanks were in fact left, the respondent could not now object, as against a holder in due course, to their being filled out in whatever way his brother chose. He could have made them payable in six months, instead of three, or to read for $10,000 each, as readily as $1,000. Nor, for that matter, does the respondent seems to have balked at amounts, having been shown to have indorsed 12 or 15 notes for his brother in a batch. To the supplying of the essential terms of what was so left incomplete, he must be held to have given his unqualified assent. 2 Cyc. 159, 162; 2 Am. & Eng. Encycl. Law, 253; Simpson v. Bovard, 74 Pa. 351; Howie v. Lewis, 14 Pa. Super. Ct. 232. But the implied authority to fill in blanks goes no further, in any case, than the insertion of that which is necessary to make the obligation speak according to its intended purpose and use. 2 Cyc. 161. And there are erasures and interlineations here. Did, then, the respondent also impliedly assent to this, by indorsing the notes in the condition in which they were at the time? Or can the mere skeleton of a note, which is in fact no note at all until it is filled out and signed, be said to have been altered in a material part, so as to discharge an indorsement, made when it is in that shape, by a change in certain of its printed terms?

The question is one of authority, as well as of the alteration of written instruments, with regard to which it is to be observed that, as is obvious, if by direct understanding with the respondent, his brother was at liberty to fix the place of payment, the changes which now appear could not be asserted by him in avoidance of his indorsement. It has also been held that, where a note is delivered with the date in blank, the implied authority to fill in the date which is so given (Bechtel's Estate, 133 Pa. 367, 19 Atl. 412) carries with it the authority to erase a date which has been written in and insert another in its place. Michigan Bank v. Eldred, 9 Wall. (U. S.) 544, 19 L. Ed. 763; Hepler v. Mt. Carmel Savings Bank, 97 Pa. 421, 39 Am. Rep. 813. So, also, where a note has been indorsed in which the place of payment is left blank, but the printed form of note used contains the word "at," importing that some place of payment was intended to be named, authority to add such place is thereby implied, and it does not avoid the instrument to do so. Wessell v. Glenn, 108 Pa. 104; Redlich v. Doll, 54 N. Y. 234, 13 Am. Rep. 573; Marshall v. Drescher, 68 Ind. 359.

But, on the other hand, the mere omission of a place of payment, there being nothing in the frame of the instrument to indicate that the one which was subsequently inserted was intended, is not enough of itself to raise an inference of authority to do so, such a clause not being necessary to the completeness of the instrument. McCoy v. Lockwood, 71 Ind. 319; Crotty v. Hodges, 4 Man. & G. 561; Toomer v. Rutland, 57 Ala. 379, 29 Am. Rep. 722; Bruce v. Wescott, 3 Barb. (N. Y.) 374; McGrath v. Clark, 56 N. Y. 34, 15 Am. Rep. 372. Much less does the implied authority to fill in blanks carry with it the right to erase what is written or printed and insert something else. Angle v. Northwestern Mutual Life Ins. Co., 92 U. S. 330, 23 L. Ed. 556; Mahaiwe Bank v. Douglass, 31 Conn. 170, 180; Adair v. England, 58 Iowa, 314, 12 N. W. 277. In the present instance, according to the printed form used, the respondent committed himself to an indorsement of notes made payable at a specific place, which he may have thought, as he now asserts, was a certain measure of protection as to the amounts for which he would be obligated, and which might possibly have proved something of a check on the ability of his brother to negotiate them, by reason of their being presented at the one place for payment, one after the other in increasing numbers. But whether correct in that idea or not, he could not be bound otherwise than in the way to which he had given his express or implied assent, and having indorsed notes payable in terms at the Second National Bank of Wilkes-Barre, he cannot be held liable for those made payable by erasures and interlineations anywhere else. It is no answer to say that the changes were in the handwriting of the maker, the same as the rest of the written parts, dispelling suspicion, and doing away thereby with the necessity for inquiry. They were changes of the original terms nonetheless, in plain sight, on the face of the notes, in a material provision, and could not therefore be passed by without manifest risk. Having been made without authority, as it now turns out, the respondent is released, and the petitioners have thus no provable claims. Nor is this saved by the provision of the negotiable instruments act, by which, "when an instrument has been materially altered, and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor." Act May 16, 1901, § 124 (P. L. 211). This only operates, as it will be noted, in favor of a holder in due course, which the petitioners, having notice of the infirmity in these notes, cannot claim to be. Id. § 52 (P. L. 202).

The proceedings are dismissed, with costs.