Sheryl Records, Inc., Appellant, *v*. The Cyrkle.
Kolber, Appellant, *v*. The Cyrkle.

Argued April 17, 1968.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Samuel P. Lavine,* with him *Steinberg, Greenstein, Richman & Price,* for appellants.

*Marvin D. Weintraub,* with him *I. Raymond Kremer,* and *Kremer, Krimsky & Luterman,* for appellees.

OPINION BY MR. JUSTICE COHEN, August 13, 1968:

These appeals arise out of two separate actions commenced by way of writs of foreign attachment against

appellees who are nonresidents of Pennsylvania for breach of contract.[1]  Attachments were filed in each case against Columbia Broadcasting System, Inc. (CBS) as garnishee, alleging that CBS had funds belonging to the individual appellees and were therefore subject to attachment.[2]

In the original and first amended complaint the appellees were named individually.  Appellees filed a petition in the nature of a preliminary objection to dissolve the attachments on the basis that any funds in the hands of CBS owing to appellees constituted salary or payment for personal services rendered and as such were exempt from attachment under the Act of April 15, 1845, P. L. 459, 42 P.S. §886.[3]

After the petition was argued and pending a determination, appellants filed amended complaints alleging that the funds held by CBS were owed to appellees as a partnership known as "The Cyrkle" (a singing group)[4] or in the alternative that it was owed to

---

[1] Appellant, Sheryl Records, Inc. had an exclusive contract to produce records for appellees on a commission basis, and appellant, Kolber had a contract with appellees to act as their manager. The debt being sued upon is a result of the contracts being allegedly breached by appellees when they entered into an agreement with and performed services for Columbia Broadcasting System, Inc.

[2] For purposes of appeal both cases are identical with respect to the issues involved and as such will be treated as one for the purpose of writing this opinion.

[3] The Act of 1845 reads as follows: "If the garnishee in his answers admit that there is in his possession or control property of the defendant liable under said act to attachment, then said magistrate may enter judgment specially, to be levied out of the effects in the hands of the garnishee, or so much of the same as may be necessary to pay the debt and costs: Provided however, That the *wages of any laborers*, or the *salary of any person* in *public or private employment, shall not be liable to attachment in the hands of the employer.*" (Emphasis supplied).

[4] The record discloses the following facts: "The Cyrkle" is a rock and roll singing group composed of the individual appellees.

appellees individually. As a result of this substantive change, "The Cyrkle" was added as a party defendant.

On June 2, 1967, the court below entered an order granting appellees' petition and dissolving the writs of foreign attachment on the basis that (1) appellants failed to establish that CBS held funds belonging to a partnership, and (2) the funds owed to appellees individually are in the nature of wages or salary for personal services and are consequently exempt from attachment. This appeal followed.

These appeals raise the following questions: (1) are the royalties owed by CBS partnership funds and as such not exempt from attachment under the Act of 1845, supra, and (2) are royalties payable to appellees individually, a group of recording artists engaged in the business of making records, exempt from attach-

---

The group was managed by the late Brian Epstein and Nathan Weiss. The managers received their compensation from appellees after appellees were paid by their employer (CBS), compensation to be measured at 25% of the receipts paid to appellees. At the present time CBS has approximately $27,000 owing to appellees (individually). These payments represent net royalties on the number of records sold by CBS on the records produced by "The Cyrkle."

The nature of the services rendered by appellees consists of going into Columbia Records recording studios along with Columbia producers and working on material until it is good enough to record. Appellees then record the song and if approved by CBS it is distributed as a single record or forms part of an album. CBS under the agreement specifies the group's accompaniment, arrangements and copying and pays the costs of such accompaniment, arrangements and copying with said costs charged against the royalties payable to appellees. In addition to the 5% royalty, appellees receive a flat rate at union scale for each recording session. In other words, they are compensated at a fixed amount for each recording session plus 5% of the wholesale price on 90% of all the records manufactured and sold by CBS on records performed by them.

ment proceedings under the Act as "wages or salaries."

The lower court in rejecting the contention of appellants that the royalties payable by CBS are partnership funds and hence subject to attachment remarked as follows: "Plaintiff attempted to avoid the salary exemption by claiming the money is owed to 'The Cyrkle', a 'copartnership or association' 'composed of the individual defendants'. However, there, are at least two reasons why this attempt must fail. First, as we construe the contract, it is between CBS and the individual defendants, Dawes, Fried and Dannemann. These individuals signed as individuals and not as members of a group. The funds due under the contract are due to the individuals. 'The Cyrkle' seems to be nothing more than a stage name under which Defendants are known and perform. Thus we determine that under the contract no funds are owing to 'The Cyrkle' by CBS."

With respect to appellants' first contention, we need only comment that after reviewing the record before us, we find ourselves in agreement with the lower court's determination. We are completely satisfied that appellants have failed to establish (1) the existence of any partnership between the individual appellees and (2) that the whole or any part of the fund held by CBS is payable to a partnership known as "The Cyrkle."

Resolving this contention against appellants, we next turn to a discussion of whether or not the royalties constitute wages or salaries within the meaning and purpose of the exemption statute.

Appellants argue that the royalties payable to appellees represent the combined services of appellees, their two managers, their arrangers and their musicians who furnished the accompaniment and back-

ground music, and thus since the royalties represent an element of profit on the services of others, at least part of the fund is attachable.

Under paragraph 7 of the agreement entered into between appellees and CBS, appellees were to receive "an aggregate royalty of 5% of all phonograph records . . . manufactured and sold . . . ." As indicated by paragraph 6(b) of the agreement,[5] the royalties payable to appellees represent net sums after CBS has deducted the costs of accompaniment and arrangements. Therefore, in any event the funds sought to be attached do not represent payment for services rendered by the arrangers and musicians.

We are also satisfied that the royalty payments are payable *only* for the personal services and efforts of appellees and in light of the statutory purpose of the exemption do not constitute profits on the services of appellees' managers.

The general principles applicable in determining whether a particular fund is exempt from attachment under the Act of 1845, was aptly reviewed in *McCloskey v. Northdale Woolen Mills,* 296 Pa. 265, 269, 145 Atl. 846 (1929), wherein it was said: "The legislative class intended to be protected by the Act of 1845 has also been the subject of frequent consideration. Whether the compensation be called 'wages' or 'salary' is immaterial: Com. ex rel. Wolfe v. Butler, 99 Pa. 535. It was intended to cover amounts due for mental or manual labor expended: Watson Co. v. Christ, 62 Pa. Su-

---

[5] In this respect the agreement provides: "We shall specify your accompaniment (instrumental and vocal), arrangements and copying in respect of master recordings made hereunder, and we shall pay the costs of such accompaniment, as well as the costs of such arrangements and copying . . . (. . . collectively referred to as 'Accompaniment costs') ; and all such Accompaniment Costs so paid by us shall constitute advances and shall be charged against your royalties. . . ."

perior Ct. 604; Hartman v. Mitzel, 8 Pa. Superior Ct. 22. It included wages due (Catlin v. Ensign, 29 Pa. 264), though the employee was compelled to pay expenses from the sum received (Pa. Coal Co. v. Costello, 33 Pa. 241), as well as commissions collectible for services performed, such as those incurred by the ordinary salesman (Hamberger v. Marcus, 157 Pa. 133), or wages and commissions (Watson Co. v. Christ, supra), and cases where a bonus was added if employment was continued for a definite period: Danziger v. Ferber, 272 Pa. 193." See *Bell v. Roberts,* 150 Pa. Superior Ct. 469, 28 A. 2d 715 (1942). Moreover, in *McCloskey,* the Court indicated that if the fund in whole or part is not recompense for personal efforts or services, it cannot qualify for an exemption under the statute since any profits derived as a result of personal services of another are not within the contemplation of the exemption provision.

In *McCloskey* the Court held that there was an element of profit on the services of others, since the debtor was being compensated not only for the services he rendered but also for the services of others he employed to perform the identical work. However, in the instant case, appellees are being compensated in the form of royalty payments for their own services and not for the services of their managers. The mere fact that once the funds are received by appellees, they in turn remunerate their managers is of no import in view of the statutory purpose.

This statutory purpose was carefully scrutinized in *Hartman v. Mitzel,* 8 Pa. Superior Ct. 22, 26 (1898), wherein the Court observed: "The aim and scope of the statute, as above stated, were not qualified; and they were further defined in Smith v. Brooke, 49 Pa. 147, where it is stated that: 'the statute secures to the laborer and his family the earnings of his own hands;

but this is its full intent and scope. . . .' It was not meant, however, to confine the operation of the act to manual labor; it applies to the wages or salary of personal labor of the hand, voice or brain, whether skilled and artistic, or unskilled and uneducated. Thus the salary of a chorister is within the proviso: Catlin v. Ensign, 29 Pa. 264, as well as the earnings of a workman in the coal mine: Coal Company v. Costello, supra."

The funds received by appellees, while in the nature of royalties on the number of records sold, are nevertheless payment for personal services rendered by themselves without the aid or assistance of their managers. It is the personal effort and talent of appellees which is being compensated by CBS and as such constitute "salary" within the meaning of the exemption statute. We are convinced that such a holding comports with the basic underlying legislative policy to secure to the laborer the earnings of his own personal labor.

Orders affirmed.

Mr. Justice ROBERTS concurs in the result.