In the Matter of the Petition of THOMAS H. STRYKER and Others, Trustees, etc., for the Dissolution of THE NEW YORK LOCOMOTIVE WORKS.

73  327|
91  315|
73  327|
17ap196|
73  327|
158a 526|

GEORGE D. LITTLE and Others, Appellants, THOMAS H. STRYKER and Another, Receivers, etc., Respondents.

*Corporation receivership — preference to wages of employees — chapter 376 of 1885.*

The general word "employees," in chapter 376 of the Laws of 1885, which provides that when a receiver of a corporation, other than insurance and moneyed corporations, shall be appointed, "the wages of the employees, operatives and laborers" of the corporation shall be preferred in payment, is to be construed as limited by the word "wages" and by the specific words "operatives and laborers" with which it is associated, and comprehends only persons performing the same kind of service that is due from the latter.

Hence, the statute does not include such employees of a manufacturing corporation as bookkeepers, superintendents and foremen paid by the month, the performance of manual labor by whom, if performed at all, is merely incidental to their general employment.

APPEAL by George D. Little, Thomas W. Hodgson, Richard Williams, William B. Deming, J. E. Stebbins and H. M. C. Skinner from an order of the Supreme Court, made at Special Term and entered in the office of the clerk of Oneida county on the 3d day of July, 1893.

The respondents, Thomas H. Stryker and Edward Comstock, as receivers of the corporation, the New York Locomotive Works, applied by petition to the court for instructions as to whether or not the claims of the appellants, with some others, should be paid by the receivers, out of the funds in their hands, as preferred claims and be treated as claims for wages. By the order appealed from the receivers were directed not to pay as preferred claims, and not to treat as claims for wages the claims mentioned in the petition or any of them.

The petition was verified, and, after a statement of a claim by the treasurer of the corporation, it stated as follows as to the claims of the appellants:

"George D. Little was a clerk and bookkeeper in the office of the said corporation, and under the said treasurer, at a salary of $100 per month, and there was due him on the said 13th day of January, 1892, $120, being for his services to that time.

" H. M. C. Skinner was superintendent of the said corporation during 1891, at a salary of $125 per month, and there was due him for his services $225 on the said 13th day of January, 1892.

" J. E. Stebbins was a draftsman employed in the office of said corporation, at a salary of $125 per month, and there was due him for his services on the said 13th day of January, 1892, $162.50.

" T. W. Hodgson was foreman of the boiler shop of the said corporation, at a salary of $225 per month, and was employed during the year 1891, and up to the said 13th day of January, 1892, and there was due him at that time for his services, $325.

"R. Williams was also foreman in the said corporation, at a salary of $125 per month, during the year 1891, and there was due him for services on the said 13th day of January, 1892, $225.

" All of the foregoing persons gave their entire time, attention and services to the various departments of the said corporation in which they were employed.

"Petitioners further state that another claim by W. B. Deming, of New York city, for $145, being amount of a draft sent by him to Brazil, to pay the expenses of an agent or employee of the said corporation, named Smith, returning from Brazil, and this draft was received by Smith, and the money obtained thereon ; that during that period the petition herein for the dissolution of said corporation was filed, and owing to the length of time necessary for mail communication the said Deming was not able to stop the said draft, and as the proceeds thereof were used by the said Smith to pay his way home, said Deming claims that your petitioners should pay him the amount in full."

On the part of the claimants, an affidavit of George D. Little was presented, in which he states " that his services consisted in keeping a set of books of account, and acting as a clerk in the office of the corporation. That none of the matters pertaining to the management of the corporation was intrusted to deponent's judgment or discretion, and all of the work performed by him was done under the management and orders of the officers of said corporation. That deponent's work was toilsome and laborious, and was routine work, varying but little in its character from day to day. That deponent was required to work from 8 o'clock A. M. until 5 o'clock P. M. on each day ; that deponent was hired, and received the sum of $100

per month, which was paid to him under his contract of hiring, at the end of each month, for his wages.

"That H. M. C. Skinner, named in said petition, was employed as a foreman over the boiler, casting, erecting and finishing departments of said locomotive works. That it was the duty of said Skinner to direct the work of the men employed in said several departments, and that he often performed manual labor, working with and assisting the mechanics and workmen of said departments in the performance of their duties. That he was required to work from 7 o'clock A. M. to 6 o'clock. P. M. of each day, and was hired and paid monthly the wages of $125 per month.

"That Richard Williams, named in said petition, was employed as a foreman; that his duties were of the same nature as the said H. M. C. Skinner, for said corporation. That he worked with and assisted the mechanics, workmen and laborers, and performed ordinary manual labor with them, and the same class of work which is usually required of mechanics in machine shops. That he was required to work from 7 A. M. to 6 P. M. of each day, and his wages were $125 per month, which was paid to him monthly, and that he was hired by the month.

"That Thomas W. Hodgson was employed by said corporation as a foreman in the boiler shop; that in addition to superintending the work of the men employed, said Hodgson assisted, and worked with, the said mechanics and workmen, performing the same ordinary manual work which is usually required of mechanics in machine shops; that he was hired and paid the sum of $225 per month for his wages, which was paid to him monthly, and that he worked the same hours each day as the said Skinner and Williams aforesaid.

"That the said J. E. Stebbins was employed by the month in the drafting room of said corporation, at the monthly wages of $125 per month, which was due him each month; that he was required to work from 8 o'clock in the morning until 6 o'clock at night; that he performed his work under the orders of the several foremen of said corporation, and that his work was of the same character which draftsmen are ordinarily required to do in mechanical work.

"That deponent, together with each of the employees named

aforesaid, were required to and did perform for said corporation menial or manual service and work, and the same class of ordinary labor that operatives, mechanics, laborers and workmen usually perform in machine shops and manufactories in the State of New York when employed by the day, week or month.

" That on or about June 15, 1891, said corporation, by its officers and agents, made a contract with one John H. Smith, by the terms of which said Smith was hired to go to Brazil, having in charge locomotives shipped to that place by said corporation; that as part of his duties he was to assist in the mechanical work of erecting and putting in order the machinery of said locomotives on their arrival at their destination; that said Smith was to receive for his wages the sum of $5.00 per day for each day that he was absent on said trip; that there is now due and unpaid on said contract of hiring the sum of $145 for 29 days' work, which said corporation and its receivers have not paid."

An affidavit of William B. Deming was produced in which he stated that he was one of the firm of Deming & Ridgeway: " That on or about October 15, 1891, one John H. Smith was in the employment of the New York Locomotive Works of Rome, N. Y., as a laborer or mechanic, and was engaged in manual labor in erecting locomotives of said corporation in Brazil; that while said Smith was so employed he represented to Deming & Ridgeway that he was in need of funds; that Deming & Ridgeway thereupon, and in February, 1892, purchased of said Smith a debt, claim or demand for his said services, due or to become due against said corporation for the sum of $145; that deponent is now the owner and holder of said claim, no part of which has been paid."

*Chas. Carmichael,* for the appellants.

*N. E. Kernan,* for the respondents.

MERWIN, J. :

The appellants claim that they are within the provisions of chapter 376 of the Laws of 1885, which provides that " When a receiver of a corporation created or organized under the laws of this State and doing business therein, other than insurance and moneyed corporations, shall be appointed, the wages of the

employees, operatives and laborers thereof shall be preferred to every other debt or claim against such corporation, and shall be paid by the receiver from the moneys of such corporation which shall first come to his hands."

The case of *Short* v. *Medberry* (29 Hun, 39) is cited as controlling in appellants' favor. That was an action against a stockholder of the Rochester Frear Stone Company to enforce that provision of the statute (§ 18, chap. 40, Laws of 1848) which provides that the stockholders of the corporation shall be liable "for all debts that may be due and owing to all their laborers, servants and apprentices, for services performed for such corporation." Curtis, the assignor of the plaintiff, applied to the company for a situation, and was told that one would be given to him if he would procure a loan of $3,000 for the company. This he did and began to work for the corporation at a salary of $1,000 a year, payable monthly or as he wanted his pay. He acted as foreman, took part in the manual labor required to manufacture the stone, kept the time of the men, solicited orders, collected bills and did whatever was required of him by the secretary of the company, who acted as its general superintendent. It was held that Curtis was a laborer or servant within the meaning of the act, and it was said that "he rendered manual service of the same kind as that performed by the other laborers in the employ of the company, and it seems to have been one of his principal duties and not a mere incident to his position."

The same statute was under consideration in the case of *Wakefield* v. *Fargo* (90 N. Y. 213), which was decided shortly before the *Short* case, but probably not then published, as it is not referred to in that case. In the *Wakefield* case it is said (pp. 217, 218): "It is plain, we think, that the services referred to are menial or manual services — that he who performs them must be of a class whose members usually look to the reward of a day's labor or service for immediate or present support, from whom the company does not expect credit, and to whom its future ability to pay is of no consequence; one who is responsible for no independent action, but who does a day's work or a stated job under the direction of a superior. (*Gordon* v. *Jennings*, L. R. [9 Q. B. D.] 45; *Dean* v. *De Wolf*, 16 Hun, 186; affd., 82 N. Y. 626.)   *   *   *   To the language of the act must be applied the rule common in the construction of statutes,

Fourth Department, November Term, 1893.          [Vol. 73.

that when two or more words of analogous meaning are coupled together, they are understood to be used in their cognate sense, express the same relations, and give color and expression to each other. Therefore, although the word 'servant' is general, it must be limited by the more specific ones, 'laborer and apprentice' with which it is associated, and be held to comprehend only persons performing the same kind of service that is due from the others."

In *People* v. *Remington* (45 Hun, 331), which involves the consideration of the statute of 1885, it was held that the superintendent of the company, employed at an annual salary, and an attorney, to whom the company was indebted for professional services, were not "employees, operatives or laborers," or their earnings "wages," within the meaning of the statute. In the opinion in that case, which upon this subject was concurred in by all the members of the court, the meaning of the expression, "the wages of the employees, operatives and laborers," and the authorities upon the subject were fully considered, and it was said that "this, like many similar statutes in this and other countries, was designed to secure the prompt payment of the wages of persons who, as a class, are dependent upon their earnings for the support of themselves and their families, and it was not designed to give a preference to the salaries and compensation due to the officers and employees of corporations occupying superior positions of trust and profit." Force was given to the use of the term "wages," it being said that it has a less extensive meaning and embraces a smaller class of credits than "earnings." The case of *South & North Ala. R. R. Co.* v. *Falkner* (49 Ala. 115) was cited, in which it was said that the term "wages," in its application to laborers and employees, "certainly conveys the idea of a subordinate occupation which is not very remunerative, one of not much independent responsibility, but rather subject to immediate supervision."

The *Remington* case was affirmed by the Court of Appeals upon the opinion delivered at the General Term. (109 N. Y. 631.) In *People ex rel. Satterlee* v. *Board of Police* (75 N. Y. 41) it is said by Judge Miller that "employees" are usually considered as embracing laborers and servants and those occupying inferior positions.

The case of *Brown* v. *A. B. C. Fence Co.* (52 Hun, 151) is cited

as sustaining the appellants' position. There, a person employed to assist the general manager of a corporation in keeping its books, and to clean the office and showroom of the corporation, and to assist in putting together, taking apart and shipping wire wicket fence and weaving machines, at the salary or wages of forty dollars a month, payable in four installments of ten dollars each, was held to be an employee within the act of 1885. This does not, I think, reach the present case.

Having in view the use in the statute of the term "wages," and the rule of construction, indicated in the case of *Wakefield* v. *Fargo*, as to the kind of service designed to be covered by the terms "employees, operatives and laborers," and the principles laid down in the *Wakefield* and the *Remington* cases, with the apparent approval of the full court in each case, it should, I think, be here held that the claims of the appellants are not within the statute.

The appellant Little was a clerk and bookkeeper in the office of the corporation, at a salary of $100 a month, payable under his contract of hiring at the end of each month. Stebbins was a draftsman employed in the office of the corporation at a salary of $125 a month, payable monthly. These are not of the grade of workmen designed to be protected by the act, and the fact that they took their orders from the officers or foremen of the corporation does not materially change the situation.

Skinner was superintendent of the corporation. This is stated in the petition, and is not denied in the affidavit of Mr. Little, which states that he was employed as a foreman over the boiler, casting, erecting and finishing departments, and it was his duty to direct the work of the men employed in said several departments. Williams was employed as a foreman, and his duties were of the same nature as those of Skinner. Each had a salary or wages of $125 a month, payable monthly.

Hodgson was foreman of the boiler shop at a salary of $225 a month, payable monthly. The statute does not reach this grade and kind of employment, and the fact that these men sometimes performed manual labor along with the ordinary workmen or alone does not change materially the situation. It is very clear that they were not hired for that purpose. The inference is plain that whatever they did in that line was incidental to their general employ-

ment. In this respect the case differs from the case of *Short* v. *Medberry*, above cited.

The claim of Deming, as stated in the petition of the receivers, was not at all for services, but for money loaned to one Smith, one of the employees of the corporation, and as such there was no basis for preference. Deming, in his affidavit, states that in February, 1892, he purchased of Smith a claim that he had against the corporation for services in the amount of $145. He does not state that he ever presented this claim to the receivers. There is no affidavit of Smith on the subject. Assuming, however, that Deming represents the claim of Smith, and that the facts as to it are as stated in the affidavit of Little, the claim for preference is not made out. Little states that on June 15, 1891, the corporation made a contract with Smith, by which Smith was hired to go to Brazil, having in charge locomotives shipped to that place; that, as a part of his duties, he was to assist in the mechanical work of erecting and putting in order the machinery of the locomotives on their arrival; that he was to receive for his wages five dollars a day for each day that he was absent on his trip, and that there is now due and unpaid on the contract of hiring $145 for twenty-nine days' work. The affidavit of Little is dated April 22, 1893. It does not state what time the claim accrued, nor does it state what the duties of Smith were. It gives a part, but whether or not this was incidental to his main duties does not appear.

The foregoing suggestions lead to an affirmance of the order.

HARDIN, P. J., and MARTIN, J., concurred.

Order affirmed.