(Supreme Court, Special Term, Cortland County.   November 16, 1896.)

1. CORPORATIONS—INSOLVENCY—PREFERENCE OF WAGES OF EMPLOYES.
    A traveling salesman employed at an annual salary is entitled to the bene-
    fit of Laws 1885, c. 376, providing that, when a receiver of a corporation
    shall be appointed, "the wages of the employés, operatives, and laborers
    thereof shall be preferred to every other debt" of the corporation.
2. SAME—LACHES OF EMPLOYE.
    An employé of a corporation is not negligent in not demanding payment
    of his annual salary before the appointment of a receiver of the corpora-
    tion, which occurred only a month after the salary became due; and there-
    fore such omission does not affect his right, under Laws 1885, c. 376, to
    preference over the other debts of the corporation.

Final accounting by Lawrence J. Fitzgerald and Jay B. Kline, as
receivers of the Cortland Manufacturing Company, Limited.

Edwin Duffey, for receivers.
Fred Hatch, for claimant Marshall.

FORBES, J.   This is a motion for the final accounting of the
receivers in the above-entitled action.   The only question about which
there is any dispute arises upon the application of Frank P. Marshall,
the assignee of a claim made by A. P. Marshall as a traveling sales-
man of the Cortland Manufacturing Company, Limited, under a con-
tract of employment by the year.   The terms of that contract arose
from an offer made on the part of the Cortland Manufacturing Com-
pany, Limited, to A. P. Marshall, dated October 17, 1892, and is in
form as follows:

"Mr. A. P. Marshall, Lancaster, N. H.—Dear Sir:   We will give you $900.00
per year, for a term of three years, to sell our work, and of such other manu-
facturers as we may ask of you; we to pay your legitimate traveling expenses,
and to allow you a vacation of one month in each year, and two months if busi-
ness will permit.
    "Yours, respectfully,        Cortland Manufacturing Company, Limited."

This offer was replied to by Marshall as follows: "Accepted.   A. P.
Marshall."   The whole agreement is upon one sheet of paper.   Upon
the motion it is conceded that the claimant went into the service of
the corporation, and he continued in its service down to the time of its
dissolution and the appointment of the receivers.   It is also con-
ceded that the sum of $1,017.58 was due to Marshall at the time of
the appointment of the receivers, exclusively for his services so ren-
dered to said company, his expenses having been paid theretofore by
said company; and that such services so rendered by him were per-
formed, and the sum due him therefor was earned, exclusively in
selling the property and output of said company.   The receivers
were appointed on the 14th day of February, 1895, and the judgment
appointing them was duly filed in the Cortland county clerk's office
on the 15th day of February, 1895, at 9 o'clock a. m.   It is also con-
ceded that said claim was duly and regularly assigned by A. P. Mar-
shall to Frank P. Marshall, the present owner and holder, on the 15th

day of February, 1896, to the full extent of said claim.    That assignment is made a part of the moving papers on behalf of said claimant. There was no question raised that the claim is unfavorably affected by the assignment thereof to the present claimant.

The only question left for discussion is the interpretation of the statute giving a preference to employés. etc., as passed May 29, 1885, under chapter 376.    See Laws 1885, p. 624.    The act is entitled:

"An act to provide for the payment of wages to employés, operatives and laborers of domestic corporations, other than insurance and moneyed corporations, of which a receiver shall be appointed.    Passed May 29th, 1885.    The people of the state of New York, represented in senate and assembly, do enact as follows:

"Section 1. Where a receiver of a corporation created or organized under the laws of this state and doing business therein, other than insurance and moneyed corporations, shall be appointed, the wages of the employés, operatives and laborers thereof shall be preferred to every other debt or claim against such corporation, and shall be paid by the receiver from the money of such corporation which shall first come into his hand.

"Sec. 2. This act shall take effect immediately."

The statute is exceedingly broad in its terms, and was undoubtedly intended to cover every case where manual service is performed, and also to cover all classes of service and labor performed by all employés, operatives, and servants, when that work, labor, or service has actually been performed for the corporation, under a contract with it, or when such labor, service, or employment has been directly performed in the business of the corporation in adding benefit and value, in creating products, and in adding money assets to the business of the corporation by persons other than foremen and superintendents assuming the place of the master.

The first proposition arising in this case is, what is an employé, as distinguished from an operative? which must have a special meaning as one working directly in the trade, operating the machinery, or performing labor as an operative in the business of the corporation. The statute also provides for the class of ordinary laborers in the service of a corporation, and performing manual labor in the business of the corporation.    A former statute, making stockholders of a corporation liable for services performed, did not embrace within its terms the word "employé."    See Laws 1848, c. 40, § 18.    This statute fixes the liability of stockholders for debts due to laborers and servants.    Dean v. De Wolf, 16 Hun, 186.    The case of Wakefield v. Fargo, 90 N. Y. 213, holds that one employed under that act at a yearly salary as bookkeeper and general manager, is not a laborer, servant, or apprentice.    It is a familiar construction of statutes that where a new statute is enacted, or where a new or additional class of privileged persons is provided for in the same line of business, we are to look at the intent of the legislature to see what has been added, the manner in which the statute has been extended or broadened, and the object of the new enactment.    We must assume, then, that an "employé," as used in the statute, means something more than an operative or laborer.    "Employé" is defined by Webster as follows: "One who is employed."    Worcester defines the same word: "One who is employed; an official; a clerk; a servant."    In the Standard Dictionary—a more recent work—the word is defined: "A

person who is employed; one who works for wages or a salary; one who is engaged in the service of, or is employed by, another." This word is the counterpart of "employer," defined by the last authority: "One who employs; one who uses or engages the services of other persons for pay."

In the case of Gurney v. Railway Co., 58 N. Y. 358, a legal construction has been given to the word "employé": "The term 'employé,' in its ordinary and usual sense, includes all whose services are rendered for another. It is not restricted to any kind of employment or service, but includes as well the professional man as the common laborer."

Some conflict has arisen in this state, and decisions have been rendered by some of the general terms construing in different ways the statute of 1885. In People v. Remington, 45 Hun, 329, decided in the Fourth department, there was only one important question actually before the court, now left undisturbed, and that is whether class 13, which embraces claims of laborers for wages earned and due prior to the passage of the act, were saved by the statute. It was the only allowance made by the special term from which an appeal was taken against the claimants. The claimants appealed from the claims disallowed. Follett, J., in an elaborate opinion, goes into the entire subject, and some confusion has arisen in attempting to follow what was there discussed. Many of those subjects were important only in that case, arising from peculiar circumstances and conditions, growing out of claims the decision of which is not involved in the case at bar. Merwin, J., dissented, and his view has been sustained in Re Scott, 148 N. Y. 588, 42 N. E. 1079. The Remington Case, in principle, was affirmed in 109 N. Y. 631, 16 N. E. 680. The same doctrine, arising under the general assignment act, was held in Re Scott, 148 N. Y. 588, 42 N. E. 1079, not to be retrospective. There is a class of cases arising under the general assignment act of 1877, which does not apply to the case at bar for the reason that chapter 40, § 18, Laws 1848, as I have suggested heretofore, embraces "a liability for all debts that may be due and owing to their laborers, servants, and apprentices for services performed for such corporation." See Wakefield v. Fargo, 90 N. Y. 213. Justice Follett, in the Remington Case, supra, follows this last-cited case, and adopts from it the following suggestion: "It seems that the services referred to are menial or manual services performed by one of a class whose members usually look to the reward of a day's labor for immediate or present support." See page 217, at the bottom of the page.

It was held in the case of Burley v. Hartson, 40 Hun, 121, under the general assignment act, as amended by chapter 328 of the Laws of 1884, that an assignment is not void, nor are its provisions ineffectual, when that class of preferences are left out of the assignment; holding that the law is sufficient to cover that class of cases, and must be construed with the statute. The same doctrine was followed in Johnston v. Kelly, 43 Hun, 379; Richardson v. Thurber, 104 N. Y. 606, 11 N. E. 133. The assignment act of 1877 was again amended by chapter 283, Laws of 1886, by enacting: "The wages or salaries actually owing to the employés of the assignor or assignors

shall be preferred before any other debt." This was evidently an extending and enlargement of the former act, and is in conflict with the decisions under the former law. This last amendment of the statute was construed in Re Heath, 46 Hun, 114. In that case the referee rejected the claim of George E. Pettit for a balance of $517 for wages due him for services rendered as a traveling agent of the assignor, upon the ground that by taking a note due at a future time he had converted his salary into an indebtedness. Barker, J., wrote the opinion, and the court unanimously reversed the finding of the referee, so far as that claim was concerned, and upheld the allowance for that class of services. This doctrine was affirmed in Re Scott, 148 N. Y. 588, 42 N. E. 1079, which, upon principle, is a direct authority in the case at bar.

There are several cases arising under the act of 1885, and it must be conceded that they are not absolutely in harmony. In Brown v. Fence Co., 52 Hun, 151, 5 N. Y. Supp. 95, it was held that a person employed to assist the general manager of a corporation in keeping its books and to clean the office and show room of the corporation, etc., is an employé, within the meaning of the Laws of 1885. In the opinion, Daniels, J., in speaking of the Wakefield-Fargo Case, 90 N. Y. 213, as well as other cases preceding this one, says: "These cases all arose under an entirely different statute, more limited in its language than the act under which this application has been made; for this act not only includes operatives and laborers, but also employés, which latter term is of broader signification in its general acceptance, and includes all persons employed, but restricted, as it should be, to the general description of persons who may be designated as laborers, operatives, and employés,"—citing Gurney v. Railroad Co., 58 N. Y. 358, and accepting the definition there made of employé, but still suggesting a limitation which is unwarranted by the facts in that case; following the Remington Case, in 45 Hun, 329. In the case of In re Stryker, 73 Hun, 327, 26 N. Y. Supp. 209, the general term in the Fourth department again limits the class of employés so as to exclude bookkeepers, superintendents, and foremen paid by the month, where the performance of manual labor by them, if performed at all, is merely incidental to their general employment. Merwin, J., in writing the opinion, alludes to the cases of Short v. Medberry, 29 Hun, 39, and Wakefield v. Fargo, 90 N. Y. 213, which were actions against stockholders, under the Laws of 1848 and 1863, and to the Remington Case, as reported in 45 Hun, 329, and modified and affirmed in 109 N. Y. 631, 16 N. E. 680, which arose under the statute of 1885.

It will be seen by a careful review of all of those cases, which are followed in the Stryker Case, that those decisions are correct upon the state of facts upon which they were decided, but some of them are not in point in the case of In re Stryker, 73 Hun, 327, 26 N. Y. Supp. 209. A case directly in point is the case of People v. Brewing Co., 91 Hun, 313, 36 N. Y. Supp. 525, where the statute is quoted, and the word "employé," as used in the statute, is given a wider signification than the words "laborers" and "apprentices." In this case it was held: "A bookkeeper employed by a corporation merely to keep

its books, falls directly within the class of persons whom the statute was designed to protect," and directly disapproves the Stryker Case, 73 Hun, 327, 26 N. Y. Supp. 209. In this case a careful review is made of many of the authorities to which I have alluded, and it seems to me that the decision is very much more satisfactory, and in principle more just to employés, than the cases which assume to hold the adverse doctrine. People v. Brewing Co. is also reported in 3 N. Y. Ann. Cas. 4, with an extensive note reviewing all of the cases on the subject theretofore decided (s. c. 36 N. Y. Supp. 525). A well-digested note of the cases may also be found at the close of the opinions in the cases of People v. Myers, 25 Abb. N. C. 368 (s. c. 11 N. Y. Supp. 217), and Johnston v. Barrills, 50 Am. St. Rep. 717 (s. c. 27 Or. 251, 41 Pac. 656).

The courts seem to be extending the benefits of these several acts to protect employés, laborers, and servants, wherever the question has been raised. In Re Sawyer, 31 Abb. N. C. 342 (s. c. 29 N. Y. Supp. 1097), where the employment of one by the year at a fixed salary, and an additional percentage on the net profits of the business conducted by him, amounted to a certain sum, it was held that under the amended assignment act he was an employé, within the meaning of that act, and entitled to preference. An extensive note is here appended reviewing the cases in this and other states. In the case of Metropolitan Trust Co. of New York v. Tonawanda Valley & C. R. Co., 103 N. Y. 245, at page 250, 8 N. E. 488, 490, Danforth, J., says: "A different relation is established by the act of 1885, c. 376, which requires a receiver of such a corporation to pay the wages of its employés and laborers in preference to other debts and claims." This case arose before the statute of 1885, in a mortgage foreclosure, where an application was made to compel the receiver to issue certificates for services performed. It will be seen, both by legislative construction and by all of the well-digested cases referred to, that it is becoming the law of this state that preferences of this character shall be made. Under chapter 899 of the Laws of 1895 (page 729) an additional statute was enacted, making it the duty of a receiver who is appointed in winding up the affairs of a copartnership "to prefer and pay the wages of any servant, domestic, or employé, due or owing to them and giving them a preference and priority over and above any and all other creditors, to be paid out of the first moneys coming into his hands as receiver after such appointment."

It seems to me that there can be no escaping the conclusion that this act must have a liberal, fair, broad, and just interpretation, and must be held to have been intended to embrace all classes of employés who are conceded to have rendered services to the corporation prior to the receivership proceedings. The amount due the claimant in this case is large, but it is made so by the provisions of the contract. His wages, by the terms of the contract, were not due until the end of the year, and he had no power to enforce their payment until due. But a single month had elapsed, after his year's salary was due, before the appointment of the receivers; so that he was not negligent, nor does he fall within the rule contended for by the nonconcurring judges of the court of appeals in the case of In re

Scott, 143 N. Y. 588, 42 N. E. 1079. If I am correct in the conclusions which I have reached, the receivers must, in the final order, be directed to pay this claim out of the balance of the assets in their hands before the final distribution of the fund. Or, if an appeal shall be taken, the amount of this claim against the corporation must be set aside and invested until the final hearing and determination, together with a sufficient sum to pay the costs and disbursements of that litigation. The amount involved is sufficient to go to the court of appeals. That court can pass upon and finally settle this question, if desirable.