Assignment of PULLIS BROS. IRON CO.; WILLIAM C. MILLER, Respondent, v. HENRY BOEMLER, Assignee, Appellant.

**St. Louis Court of Appeals, December 3, 1901.**

1. **Corporations: WAGES: PRIORITY OF PAYMENT: STATUTORY CONSTRUCTION.** A superintendent of an iron company whose duty it was to look after patterns and the office and to see that the men worked is not within the scope and purpose of the statute according priority of payment to the wages of employees or operatives of insolvent corporations. That statute protects only such employees as perform assigned tasks requiring no oversight and who are not concerned with the general policy and management of the business.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

REVERSED.

### STATEMENT OF THE CASE.

Respondent was superintendent of Pullis Bros. Iron Company, which made an assignment on the twenty-fifth day of March, 1896, to Henry Boemler, for the benefit of its creditors. It owed respondent, at the time, five hundred and sixteen dollars and five cents for salary or wages, which sum was allowed by the assignee in May, 1896, as a general demand. In April, 1897, respondent presented a petition to the circuit court of the city of St. Louis, where the assignment proceedings were pending, praying an order on the assignee to allow and pay one hundred dollars of such demand as a preferred debt, which it was claimed to be by virtue of section 1006, Revised Statutes 1889.

The petition stated the assignee had sufficient funds in his hands. The circuit court granted the relief prayed, and the assignee appealed.

Miller was appointed superintendent of said Pullis Bros. Iron Company by the board of directors on the thirteenth day of January, 1896, at a salary of eighteen hundred dollars for the past year; so the record states the books of said company show. That was a little over two months before the failure and a good part of his claim was earned, if at all, before he was appointed and his salary fixed.

His duties as superintendent are thus stated by the company's president, Thomas R. Pullis: "He looked after the patterns, the office and about the building, and saw that the men worked." Miller at the date of his appointment as superintendent was a director and vice-president.

*Henry Boemler* for appellant.

If there was error committed in regard to the allowance of the claim presented to the assignee, in regard to the force and effect of said allowance, that allowance was, to all intents and purposes, a judgment appealable from, as such, and conclusive, as such. R. S. 1889, sec. 446; Nelson v. Jacobs, 93 Mo. 344; Roon v. Winn, 93 Mo. 512; Eppright v. Kaufmann, 90 Mo. 25; Rice, Stix & Co. v. McClure et al., 74 Mo. App. 382.

*E. C. Lackland, Jr.,* for respondent.

(1)   A foreman or superintendent of an iron foundry, whose duties are to look after the moulding of patterns, and keep the laborers and mechanics at work, is such an employee or operative as is contemplated by section 1006, Revised Statutes 1899.   (2)   In the case of an assigned estate, where an employee or operative's claim for wages has been allowed in excess of one hundred dollars, said sum of one hundred dollars by operation of law is a preferred claim, and has preference to any other claims, debts or demands whatsoever, and this too, even though said operative or employee at the time of being such was also an officer or director of the company. Foster v. Mullanphy Planing Mill Co., 92 Mo. 89.

GOODE, J.—We have read many cases bearing on the question whether respondent's demand falls within the scope and purpose of the statute according priority of payment to the wages of employees or operatives of insolvent corporations, and find a great weight of authority on the negative side. Similar statutes, awarding preference to wages over other debts, or giving some superior right to laborers and wage-earners, have been frequently construed; and while the courts have experienced some difficulty in defining with precision the classes of service which such legislation is designed to prefer in respect to payment, they have always ruled that the service

of a superintendent of workmen is not included. Often the words used in the act to designate the favored employees, have so broad a significance that to give them their full meaning would extend the law beyond the intention of its makers, and the purpose to be accomplished. Our statute affords priority to "all debts due employees or operatives of wages for their labor." The phrase "wages for labor," if we construe the words according to their ordinary meaning, defines compensation for either manual labor, or, at most, for any service rendered in performing a necessary detail of a company's business by the employee's personal exertion, rather than for work performed by others under his supervision. The words "employees and other operatives" enforce this view.

An operative is defined by lexicographers to be a skilled workman; an artisan; one who operates a machine in a mill or factory. Any one may logically be called an employee who is employed by another; but by popular usage—that is, as a word of the English language possessing a definite value—it is confined to clerks or laborers who work for a salary or wages; and this is the sense attached to it in the dictionaries in defining its meaning, instead of tracing its etymology. In vernacular speech, neither of the words is ever used to designate a general superintendent of a corporation. It should be noticed, too, that the employees intended by the statute must be restricted inside the narrower limits of the word operatives; for the statute says: "employees and *other operatives;*" showing that only one class of servants is intended. "When one or more words of analogous meaning are employed together, they are understood to be used in their cognate sense to express the same relation and give color and expression to each other." In the matter of Stryker, 158 N. Y. 526.

This statute (sec. 1006, R. S. 1899) is so similar to the one contained in the chapter on executions, that the two ought to be read together as *in pari materia.* The first clause of the execution statute reads: "Hereafter, when the property of

a company, corporation, firm or person shall be seized upon by any process of any court in this State, or when their business shall be suspended by the action of creditors, or be put into the hands of a receiver or trustee; then in all such cases, the debts owing *laborers* or *servants* which have accrued by reason of their labor and employment, to an amount not exceeding one hundred dollars to each employee, for work or labor performed within six months next preceding the seizure or transfer of such property, shall be treated as preferred debts, and such laborers or employees shall be treated as preferred creditors and shall be first paid in full; and if there be not sufficient to pay them in full, then the same shall be paid pro rata after paying costs." R. S. 1899, sec. 3168. Then follows the clause providing the mode by which the priority may be enforced, in which the claim for wages for such *laborer* or *servant* is spoken of. This section uses the word "employees" interchangeably with the words "laborers and servants," showing that though it is susceptible of a larger meaning, it was not intended by the statute to have its full significance or embrace any person who would not fall within the category of laborer or servant.

The purpose of both laws, namely, to prefer as to payment debts due for wages, to workmen whose personal earnings are usually their only means of livelihood, points to the same conclusion. In construing such an act, it was said: "This, like many similar statutes in this and other countries, was designed to secure the prompt payment of the wages of persons who, as a class, are dependent upon their earnings for the support of themselves and their families; and it was not designed to give preference to the salaries and compensation due to the officers and employees of corporations, occupying superior positions of trust and profit." People v. Remington, 52 N. Y. 329. We are satisfied that whether the statute be interpreted according to the ordinary force of its terms, or according to the object of its enactment, it is inapplicable to

the case of a general superintendent of a company, whose salary is fixed by the year and whose duties are of the kind the respondent performed; looking after patterns, the office and building and seeing that the men worked. It is perhaps better to refrain from an attempt to formulate any general rule as to what classes of employees are within the purpose of the statute, but certainly no rule can be prescribed that will include the respondent, without so expanding the law as to convert it into one different from that enacted.

Turning now to the decisions on the subject, we find that claims for preferment of their wages or salaries, under statutes akin to ours, by persons who filled positions the same as, or similar to, the one held by the respondent, have been rejected in nearly or quite every instance where the matter has been adjudicated. Probably no more thoroughly treated case can be found than, In the Matter of Stryker, 26 N. Y. Supp. 209 and 158 N. Y., supra. It was decided first by the Supreme Court of New York and afterwards by the Court of Appeals, and both courts delivered opinions. They rejected the demands of a bookkeeper, draughtsman, shop foremen and superintendent of a manufacturing corporation to be preferred; holding that neither of them was embraced in the terms of a statute allowing priority of payment to "the wages of the employees, operatives and laborers" of corporations in the hands of a receiver.

In People v. Remington, 52 N. Y. 329, the same statute was involved as in In re Stryker, while the employees asking a preference were the superintendent of a manufacturing corporation, its attorney and an agent selling goods on commission. The superintendent was employed at an annual salary. All the claims were disallowed. The court followed Railway Co. v. Falkner, 49 Ala. 115, in holding "The term 'wages' indicates inconsiderable pay without excluding 'salary,' which is suggestive of larger compensation for personal services. But its application to laborers and employees certainly conveys the

idea of a subordinate occupation which is not very remunerative; one of not much independent responsibility, but rather subject to immediate supervision."

In Dean v. DeWolf, 16 Hun. 186, 82 N. Y. 626, a superintendent of a mining company was ruled not entitled to the benefit of an act making stockholders of insolvent companies individually liable for debts due to "laborers or servants;" and the fact that he occasionally performed manual labor in the discharge of his duties did not alter the matter; as was also ruled in the Stryker case, 26 N. Y. Supp., supra. The opinion says: "Common sense rejects an interpretation which places the operatives in a factory, or the laborers in a mine, and the persons whose duties relate to the conduct and superintendence of their work, inside the same designation. In one sense they are all servants or laborers, because they render service or perform labor. But such a construction would include the officers of a company, its attorney and counselor and all other persons who should perform any service for it. That construction has been uniformly rejected. Who then are laborers and servants? A proper answer to that question is, that they are persons who, in common parlance, and according to the general understanding of men, fall under that appellation in enumerating the different classes of persons employed by a corporation."

To the same effect are numerous other cases; many similar to the one under consideration in respect to the kind of employment for which a preference was urged and the statutes under which the preference was claimed, and all sufficiently germane to be persuasive. Coffin v. Reynolds, 37 N. Y. 640; Hill v. Spencer, 61 N. Y. 274; Krauser v. Ruckel, 17 Hun. 463; People ex rel. v. Meyers, 25 Abb. Pr. New Cases (N. Y.) 368; Ericson v. Brown, 38 Barb. 390; Wakefield v. Fargo, 90 N. Y. 213; People v. Board of Police, 75 N. Y. 38. In so far as Short v. Medberry, 29 Hun. 39, seems to be different, it has not been followed and was treated

In re Stryker, 26 N. Y. Supp., supra, as having been in effect overruled by Wakefield v. Fargo, 90 N. Y., supra.   The same may be said of Gurney v. Railway Co., 58 N. Y. 358.

Of decisions in other jurisdictions than New York, we have consulted the following:   Gordon v. Jennings, L. R. 9 Q. B. 417; Peck v. Miller, 39 Mich. 594; Brockway v. Innes, Id. 47; Pennsylvania Etc. Co. v. Leuffer, 84 Pa. St. 168; Smith v. Brooke, 49 Pa. St. 150; Whittaker v. Smith, 81 N. C. 340; In re Carolina Cooperage Co., 96 Fed. Rep. 605; Malcomson v. Wappoo, 86 Fed. Rep. 192; Cole v. Hand, 7 L. R. A. 96.

In all the foregoing cases, attempts to extend the significance of such words as servants, laborers, operatives and employees, used in statutes like the one we are construing, to embrace persons in occupations calling for oversight, management or discretion, failed; the court in every case holding that the words denoted, and were intended to denote, only such employees as themselves perform an assigned task, without being concerned with the general policy, management or success of the business in the prosecution of which they are engaged to help.   Perhaps that is as good a criterion as any.

By the terms of the statute, as well as by the precedents, we feel constrained to hold that the learned circuit judge erred in ordering respondent's demand to be paid by the assignee, to the amount of one hundred dollars, as a preferred debt for wages.

The judgment is reversed.   All concur.