### UNITED STATES v. SCHLIERHOLZ.

(District Court, E. D. Arkansas, W. D. April 22, 1905.)

UNITED STATES OFFICERS—EXTORTION.

    Under Const. art. 2, § 2, providing that all officers shall be appointed by the President, by and with the advice of the Senate, or Congress may vest the appointment of such inferior officers as they think proper in the President alone, in the courts, or in the heads of departments, a special agent of the Land Department of the United States, appointed under Appropriation Act June 4, 1897, c. 2, 30 Stat. 32, to meet the expenses of protecting timber on public lands, but providing no fixed salary, tenure of office, or person with power to appoint, was not an officer of the United States, within Rev. St. § 5481 [U. S. Comp. St. 1901, p. 3701], providing that every officer of the United States, guilty of extortion under color of his office, shall be punished, etc.

W. G. Whipple, U. S. Atty.
James Brizzolara, for defendant.

TRIEBER, District Judge. The defendant demurs to an indictment in which he is charged with violation of section 5481, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3701]. The offense is alleged to have been committed by the defendant, who, it is charged in the indictment, "was then and there an officer of the United States, to wit, a special agent of the Land Department of the United States." The only question raised by the demurrer is whether such a special agent of the Land Department of the United States is an officer of the United States, within the meaning of that section. In United States v. Schlierholz (D. C.) 133 Fed. 333, the identical question was before Judge Adams, of the Eastern District of Missouri, and it was by him held that such an official is not an officer of the United

States, within the meaning of the statute, and for this reason the demurrer to the indictment was sustained. Ordinarily this court would follow that decision, unless, in its opinion, it is clearly wrong, not only owing to the high standing of Judge Adams as a jurist, but for the further reason that it is advisable that there should be some uniformity among the federal judges of the same circuit in the construction of statutes which have not been construed by the appellate courts whose decisions are binding on the District Courts. It is true, the decisions of one district judge are not conclusive on any other, but they are persuasive, especially if the matters determined have received careful consideration, and a written opinion, giving the reasons for the conclusion reached, has been prepared. But the attorney for the United States very earnestly contends that in rendering that decision Judge Adams overlooked some decisions of the Supreme Court of the United States and of the Circuit Courts of Appeals, which, in his opinion, control this case, and conclusively establish the fact that a special agent of the Land Office is an officer, within the meaning of the law.

The statute, being highly penal, must be strictly construed. Nothing can be taken by intendment or implication. There can be no constructive offense. Before a man can be punished, his case must be plainly and unmistakably within the statute. At the same time, even penal statutes must be naturally construed according to the legislative intent as expressed in the enactment; the courts refusing, on the one hand, to extend the punishment to cases which are not clearly embraced in them, and, on the other hand, equally refusing, by any mere verbal nicety, forced construction, or equitable interpretation, to exonerate parties plainly within their scope. Sedgwick on Statutory & Constitutional Law (2d Ed.) 282.

In United States v. Harris, 177 U. S. 305, 309, 20 Sup. Ct. 609, 44 L. Ed. 780, it was sought to recover a penalty from receivers of a railroad for an alleged violation of sections 4386–4389, Rev. St. [U. S. Comp. St. 1901, pp. 2995, 2996]. Those sections made it an offense for a railroad company engaged in interstate commerce, carrying cattle and other animals, to confine them in cars, etc., for a longer period than 28 hours, without unloading the same for a rest, water, and feeding for a period of at least 5 consecutive hours. The contention on behalf of the government was that by the words "any company" Congress intended to embrace all common carriers; that the act in question was a humane one, designed to prevent cruelty to animals; and that whoever had charge of the railroad, whether as a receiver or otherwise, ought to see that these wholesome and humane regulations were obeyed, or were subject to the penalty for violating them. But the court refused to adopt this view, saying:

"Only by a strained and artificial construction, based chiefly upon a consideration of the mischief which the Legislature sought to remedy, can receivers be brought within the terms of the law. But can such a kind of construction be resorted to in enforcing a penal statute? Giving all proper force to the contention of the counsel of the government that there has been some relaxation on the part of the courts in applying the rule of strict construction to such statutes, it still remains that the intention of a penal stat-

ute: must be found in the language actually used, interpreted according to its fair and obvious meaning. It is not permitted to courts, in this class of cases, to attribute. inadvertence or oversight to the Legislature when enumerating the classes of·persons who are subjected to a penal enactment, nor to· depart from the settled meaning of words or phrases in order to bring persons not named or distinctly described within the supposed purpose of the statute."

In Field v. United States, decided only a week ago by the United States Circuit Court of Appeals for the Eighth Circuit (137 Fed. 6), the defendant was indicted as an officer of a bankrupt corporation, who had concealed assets of the bankrupt corporation in violation of section 29b (1) of the Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433]. That section makes it an offense for "a bankrupt" to conceal from his trustee any of the property belonging to the estate in bankruptcy. On. behalf of the defendant it was contended that an officer of a corporation, although ·he is the only one who can prepare the schedules for a bankrupt corporation, is not a bankrupt, and for this reason not within the provisions of that act. This was sustained by the court. To the same effect, see United States v. Lake (D. C.) 129 Fed. 499.

It therefore becomes necessary to determine what constitutes "an officer of the United States," within the meaning of the Constitution and laws of the United States.

As shown by Judge Adams in his opinion, section 2, art. 2, of the Constitution, provides that all officers shall be appointed by the President, by and with the advice of the Senate, with a proviso that Congress may by law vest the appointment of such inferior officers as· they·think proper in the President alone, in the courts, or in the heads· of departments. As a proviso must be strictly construed (U. S. v. Dickson, 15 Pet. 141, 10 L. Ed. 689; Dollar Savings Bank v. U. S., 19 Wall. 227, 22 L. Ed. 80; Gould v. N. Y. Life Ins. Co. [D. C.] 132 Fed. 927), it is clear that no one· can be deemed an "officer of the United States" unless appointed by the President, by and with the advice and consent of the Senate, or appointed by the President alone, or a court of law, or the head of a department; and, if the latter, Congress must have vested that power in the person making it, by some statute, and Congress must also have created the office, unless it is one created by the Constitution itself.

In United States v. Maurice, 2 Brock. 96, Fed. Cas. No. 15,747, Chief Justice Marshall, sitting as a circuit justice, in speaking of an appointment of an agent of fortifications made by the Secretary of War—one of the heads of a department—said:

"It is too clear, I think, for controversy, that appointments to office can be made by heads of departments in those cases only where Congress has authorized it by law."

This was cited with approbation and followed in Auffmordt v. Hedden, 137 U. S. 310, 327, 11 Sup. Ct. 103, 34 L. Ed. 674.

On behalf of the government it is insisted that Congress has created the office of special agent of the Land Office, and author-.ized the Secretary of the Interior, who is the head of a department, to appoint such officers. That there is no act of Congress expressly creating the office has been determined by the Supreme Court in

Wells v. Nickles, 104 U. S. 444, 26 L. Ed. 825.   But it is contended that by the decision of the court in that case it is settled that, by appropriating money for the payment of such agents, Congress has authorized their appointment, and in fact created the office.   A careful reading of the decision of that case does not sustain this contention.   What the Supreme Court did decide was that, although Congress had not expressly authorized the Secretary of the Interior or other officer of the Land Department to appoint such agents, yet, the Secretary having employed such agents, with certain well-defined powers and duties—among others, to compromise claims in favor of the United States—an appropriation by Congress to pay these agents is a ratification of the acts of the Secretary of the Interior, and any compromise made by such agents, within the scope of their authority, will be binding upon the government. That was a civil action, and for this reason not subject to the strict rules of construction governing criminal proceedings.

Do the appropriation acts create the office of special agent, or authorize the employment of such agents as officers?   The appointment under which the defendant acted was made under the appropriation act of June 4, 1897, c. 2, 30 Stat. 32.   Referring to that act, we find the following provision:

"For depredations on public timber, protecting public lands and settlement of claims for swamp lands and swamp land indemnity. * * * To meet the expenses of protecting timber on the public lands and for more efficient execution of the law and rules relating to the cutting thereof," etc., "$90,-000.00, provided that agents and others employed under this appropriation shall be allowed per diem subject to such rules and regulations as the Secretary of the Interior may prescribe in lieu of subsistence, at a rate not exceeding $3.00 per day each and actual necessary expenses for transportation."

It will be noticed that in this act nothing is said by whom the persons referred to as "agents or other persons employed under this appropriation" shall be employed.   All the Secretary of the Interior is authorized to do is to prescribe rules and regulations "in lieu of subsistence, at a rate not exceeding $3.00 per day each and actual necessary expenses."   No salary is fixed, no tenure provided, no office mentioned, nor who shall have the power to appoint them. The first act providing for the selection of these agents by the Secretary of the Interior is the appropriation act of July 1, 1898, c. 546, 30 Stat. 618, where it was enacted under the same heading, and for the same purposes as in the previous act, "provided that agents and others employed under this appropriation shall be selected by the Secretary of the Interior," etc.   This is the first act which authorizes the Secretary of the Interior to make the selection.   This provision is found in every subsequent appropriation act.   In every one of them the language used is "that agents and others employed under this appropriation shall be selected by the Secretary of the Interior," etc.   Only the most liberal interpretation of these acts can justify a court in holding that the intention of Congress, as expressed in these appropriation acts, was to create new offices, within the meaning of the national Constitution.   In none of these acts is there any reference to an "appointment," but the words used

in each of these acts are "employed under this appropriation." This alone would sustain the opinion of Judge Adams that a special agent of the Land Office is an employé, and not an officer. If an "agent" employed under those acts is an "officer," within the meaning of the Constitution, why is not every "other person employed under this appropriation" also an officer of the United States within the meaning of article 2, § 2, of the Constitution? The object of these appropriations, as stated by Congress in each of those acts, is "depredations on public timber, protecting public lands and settlement of claims for swamp lands and swamp land indemnity." The act then proceeds, "To meet the expenses of protecting timber on the public lands," etc. There can be no doubt that this section authorizes the employment of any persons who, in the judgment of the Secretary of the Interior, may be required to carry out the objects of the appropriation, including surveyors and chain carriers, if a survey of some tract of land is necessary to ascertain the exact boundaries; stenographers for the purpose of reducing to writing evidence gathered; guards to protect timber from being cut, or if seized by special agents as having been unlawfully cut; and many other persons, whom it is unnecessary to mention. The very fact that the appropriation is so general proves conclusively that neither Congress, nor the head of the department who asked for the appropriation, could state with any degree of certainty what persons it might be necessary to employ, and what duties such employés might be called upon to discharge. Congress therefore wisely left the entire matter to the discretion of the Secretary of the Interior, limiting him only in the one item of expense for subsistence. That the persons thus employed are not officers, within the meaning of the constitutional provision, has been decided by the Supreme Court in several cases. In United States v. Germaine, 99 U. S. 508, 511, 25 L. Ed. 482, cited by Judge Adams in his opinion, the officer in question was a civil surgeon appointed to make periodical examinations of pensioners, and to examine applicants for pensions. The statute (section 4777, Rev. St.) expressly authorized the Commissioner of Pensions to "appoint" such examiners, and not merely to "employ" them, as in the case at bar, but the court held that they were not "officers."

United States v. Hartwell, 6 Wall. 385, 18 L. Ed. 830, so earnestly relied upon by counsel for the United States, is distinguished in the Germaine Case upon grounds which are peculiarly applicable to the case at bar. The court there say:

"United States v. Hartwell is, as supposed, in conflict with these views. It is clearly stated and relied on in the opinion that Hartwell's appointment was approved by the Assistant Secretary of the Treasury, as acting head of that department, and he was therefore an officer of the United States. If we look to the nature of defendant's employment, we think it equally clear that he is not an officer. In that case the court said the term embraces the ideas of tenure, duration, emolument, and duties, and that the latter was continuing and permanent, not occasional or temporary. In the case before us the duties are not continuing and permanent, and they are occasional and intermittent. The surgeon is only to act when called on by the Commissioner of Pensions in some special case, as when some pensioner or claimant of a pension presents himself for examination. He may make fifty of these examinations

in a year, or none. He is required to keep no place of business for the public use. He gives no bond and takes no oath, unless by some order of the Commissioner of Pensions of which we are not advised. No regular appropriation is made to pay his compensation, which is two dollars for every examination, but it is paid out of money appropriated for paying pensions in his district, under regulations to be prescribed by the Commissioner. He is but an agent of the Commissioner, appointed by him, and removable by him at his pleasure, to procure information needed to aid in the performance of his own official duties. He may appoint one or a dozen persons to do the same thing. * * * If Congress had passed a law requiring the Commissioner to appoint a man to furnish each agency with fuel at a price per ton fixed by law, high enough to secure the delivery of the coal, he would have as much claim to be an officer of the United States as the surgeons appointed under this statute."

In United States v. Mouat, 124 U. S. 303, 307, 8 Sup. Ct. 505, 31 L. Ed. 463, the court, following United States v. Germaine, held that a paymaster's clerk appointed by the paymaster of the navy, with the approval of the Secretary of the Navy, is not an officer of the United States.

In United States v. Smith, 124 U. S. 525, 532, 8 Sup. Ct. 595, 31 L. Ed. 534, clerks of a collector of customs are held not to be officers of the United States, in the sense of section 2, art. 2, of the Constitution.

There is nothing in any of the acts under which defendant was employed fixing the tenure, duration, emolument, and duties of his position. Whether they shall be continuing and permanent, or occasional and intermittent, what his duties shall consist of, what his compensation shall be, are all dependent upon the will of the Secretary of the Interior or the Commissioner of the General Land Office. No regular appropriation to pay his compensation is made, but it is paid out of the general appropriation for the protection of timber and public lands. He is but an agent or person employed by the Secretary, removable at his pleasure, to perform such duties at such times and at such places as may be demanded of him. The Secretary may appoint one or one hundred persons to do the same thing. The compensation may be small or large. He is not required to keep any designated place of business for the public use, but may be and is quite frequently ordered from one section of the country to another.

In Hall v. Wisconsin, 103 U. S. 5, 26 L. Ed. 302, the court was called upon to determine whether a commission to make a geological, mineralogical, and agricultural survey of the state, appointed under an act of the Legislature of a state, were officers, within the meaning of the law; and it was held (reversing the Supreme Court of Wisconsin) that they were not.

In Auffmordt v. Hedden, 137 U. S. 310, 326, 11 Sup. Ct. 103, 34 L. Ed. 674, the question was whether a merchant appraiser, who took an oath of office and was selected in compliance with the statute and the treasury regulations, was an officer, and the court held he was not. Mr. Justice Blatchford, who delivered the opinion of the court, said:

"He is not a 'clerk,' nor an 'agent,' nor a 'person employed' in the customs department, within the meaning of section 6 of the civil service act; nor is he an officer of the United States, required to be appointed by the President or a

court of law or the head of a department. * * * He has no general functions, nor any employment which has any duration as to time, or which extends over any case further than he is selected to act in this particular case. * * * The statute does not use the word 'appoint,' but used the word 'select.' His position is without tenure, duration, continuing emolument, or continuous duties, and he acts only occasionally and temporarily. Therefore he is not an 'officer,' within the meaning of the clause of the Constitution referred to."

In United States v. Maurice, supra, Chief Justice Marshall said:

"Although an office is an 'employment,' it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act or perform a service, without becoming an officer."

In re Attorneys' Oaths, 20 Johns. 492, the court defined an office to be "An employment on behalf of the government in any station of public trust not merely transient, occasional, or incidental."

Judge Cooley in People v. Langdon, 40 Mich. 673, in holding that the chief clerk in the assessor's office of Detroit, appointed under a law providing, "the assessor is hereby authorized to employ such clerical assistance as the business of the office may render necessary, and such clerical assistance shall receive such compensation per diem as the common council shall from time to time fix by resolution," is not an officer, gave the following legal definition as to what constituted "office":

"An office is a special trust or charge created by competent authority. * * * The officer is distinguished from the employé in the greater importance, dignity, and independence of his position; in being required to take on official oath, and perhaps to give official bond; in the liability of being called to account as a public offender for misfeasance or nonfeasance in office; and usually, though not necessarily, in the tenure of his position. In particular cases other distinctions will appear, which are not general."

Further on that eminent jurist says:

"But the duties of the assessor's clerk, such as they are, can be changed at the will of the superior, since no rule of law or well-defined custom forbids it."

In the case at bar the duties of the defendant could be changed at any time by his superior officer, as no statute defines them.

The district attorney, in his able brief, relies, among others, on the following authorities: United States v. Hartwell, hereinbefore referred to; McGregor v. United States (C. C. A.) 134 Fed. 187, where it was held that a clerk in the Post-Office Department is an officer; United States v. McCrory, 91 Fed. 295, 33 C. C. A. 515, where it was held that a letter carrier was an officer; Williams v. United States, 168 U. S. 387, 18 Sup. Ct. 92, 42 L. Ed. 509, where it was held that a Chinese inspector is an officer, within the meaning of this section of law. He also cites a large number of decisions in which the courts have held in civil actions that a receiver of a national bank is an officer—among others, Gibson v. Peters, 150 U. S. 342, 14 Sup. Ct. 134, 37 L. Ed. 1104; Ex parte Chetwood, 165 U. S. 457, 17 Sup. Ct. 385, 41 L. Ed. 782; Auten v. U. S. National Bank, 174 U. S. 125, 19 Sup. Ct. 628, 43 L. Ed. 920. Assuming that the same rule would apply to criminal proceedings as in civil actions, the national bank receiver cases are easily distinguishable from the case at bar. The office of a receiver is expressly provided for

by sections 5191, 5234, Rev. St. [pages 3486, 3507, U. S. Comp. St. 1901]. In the first-named section the appointment of the receiver is to be made by the Comptroller, with the concurrence of the Secretary of the Treasury; and, while section 5234 does not contain that provision, the courts have placed their decisions that a receiver is an officer of the United States upon the ground that the Comptroller is the chief officer of a bureau in the Treasury Department, and appointments made by him are to be presumed to be made with the concurrent approval of the Secretary of the Treasury, and for this reason are made by the head of a department, within the meaning of section 2, art. 2, of the Constitution. The leading case on this subject, and which has been cited and followed by the Supreme Court and all other federal courts, is Price v. Abbott (C. C.) 17 Fed. 506, decided by Mr. Justice Gray on circuit. An examination of that case will show that it is based solely upon the grounds above stated. As Congress has never authorized the appointment of a special agent of the General Land Office, those cases are inapplicable, especially in view of the well-recognized rule that criminal statutes must be strictly construed. In the Hartwell Case the statute under which the defendant was indicted provided that "all officers and other persons charged by this act or any other act," etc., and also, "The provisions of this act shall be so construed as to apply to all persons charged with the safe keeping, transfer or disbursement of the public money, whether such persons be indicted as receivers or depositories of the same." Act Aug. 6, 1846, c. 90, 9 Stat. 59. A later act (the general appropriation act of July 23, 1866, c. 208, 14 Stat. 200) authorized the Assistant Treasurer to appoint a specified number of clerks, who were to receive, respectively, the salaries therein prescribed, under which act the indictment was found. The question whether the defendant was an officer, within the meaning of section 2, art. 2, of the Constitution, was neither raised, nor determined by the court. All that was decided was that the defendant was an officer or person charged with the safekeeping of public moneys, within the meaning of the act of 1846. In the Williams Case, Mr. Justice Harlan, who delivered the opinion of the court, held that a Chinese inspector was an officer, within the meaning of section 5481, Rev. St. [page 3701, U. S. Comp. St. 1901]. The question seems not to have been raised or argued by counsel, but was decided by the court; and, although no reasons are given by the learned justice for the conclusions reached, the court did expressly determine the question. An examination of the provisions of the appropriation acts authorizing the appointment of Chinese inspectors will show that the language there used was quite different from that authorizing the employment of agents to protect the public lands. In the former acts the language used is that the appropriation is "to prevent unlawful entry of Chinese into the United States by the appointment of suitable officers to enforce the laws in relation thereto." Act Aug. 30, 1890, c. 837, 26 Stat. 387; Act March 3, 1891, c. 542, 26 Stat. 968; Act March 12, 1894, c. 37, 28 Stat. 41; Act Aug. 18, 1894, c. 301, 28 Stat. 390. In the case at bar the appropriation is made "to meet the expenses of protect-

ing timber on public lands," etc., "* * * provided that agents and others employed under this appropriation shall be selected by the Secretary of the Interior." In the one case the Secretary of the Treasury is authorized to "appoint suitable officers"; in the other, the Secretary of the Interior is authorized to "employ agents and others." In the common acceptation, the meaning of the words "appointment" and "employment" is quite different. An officer is usually appointed, while a person employed is spoken of as an "employé," and but rarely, if ever, as an "officer."

The Century Dictionary defines "appointment" as "the act of appointing, designating, or placing in office. An office held by a person appointed."

Among the definitions given to those words by the courts are the following:

"Appointment is the designation of a person by the person having authority therefor to discharge the duties of some office or trust." State v. New Orleans, 41 La. Ann. 156, 6 South. 592. "Where the selection of an officer is referred to some functionary, it is called an 'appointment.'" Speed v. Crawford, 60 Ky. 207.

The definition of "employé," as given by the Century Dictionary is:

"One who works for an employer; a person working for salary or wages; applied to any one so working, but usually only to clerks, workmen, laborers, etc., and but rarely to the higher officers of a corporation or government or to domestic servants."

In re Cortland Manufacturing Co. (Sup.) 45 N. Y. Supp. 630, an employé is defined to be a person who is employed; one who works for wages or a salary.

In Palmer v. Van Santvoord, 153 N. Y. 612, 47 N. E. 915, 38 L. R. A. 402, the court held:

"An employé is one who works for an employer; a person working for a salary or wage. The word is applied to any one so working, but usually only to clerks, workmen, laborers, etc., and but rarely to officers of a government or corporation."

In the McGregor Case the statutes under which the indictments were drawn (sections 1781, 1782, Rev. St. [page 1212, U. S. Comp. St. 1901]), include any "officer or agent" of the government (section 1781), and "other officer or clerk in the employ of the government" (section 1782).

In the McCrory Case, the court expressly holds that letter carriers are officers, because they are appointed by the Postmaster General, the head of a department, under authority of an act of Congress.

This review of the cases relied upon by the district attorney clearly shows that they are not applicable to the case at bar, and that the demurrer to the indictment should be sustained.